# AMERICAN HARDWOOD LUMBER COMPANY, Respondent, v. LEANDER F. NICKEY, Appellant.

### St. Louis Court of Appeals, March 17, 1903.

1. **Partnership:** A CHOSE ACTION: SURVIVORSHIP. The surviving member of a partnership has the right to assign a chose in action which belonged to the partnership, as the common-law rule on that question obtains in this State.

2. ———: GROUND FOR ATTACHMENT MAY BE WAIVED. An attachment defendant by settling with the attachment plaintiff, waives the question whether there were reasonable grounds for the suing out of the writ, and can not set up that it was wrongfully sued out, and his performance of a contract with the attachment plaintiff thereby excused.

3. ———: PLEADINGS, ESTOPPEL THEREBY, WHEN. A party by a pleading may estop himself from asserting a different interpretation of a contract thereafter, especially if any advantage is to be gained thereby.

4. ———: CONTINUANCE, AFFIDAVIT FOR: WAIVER OF RIGHT TO CROSS-EXAMINE WITNESS. On an issue whether certain property had been delivered to defendant in as good condition as when received, plaintiff offered evidence of an absent witness, set forth in an application for a continuance, which defendant had admitted would be sworn to, were the witness present. The application did not state that the witness had seen the property when delivered, and was an expression of witness's opinion as to its condition. *Held,* that the admission of defendant operated as a waiver of his right to cross-examine the witness as to his knowledge of the facts on which he based his opinion, and, hence, the evidence was improperly excluded.

Appeal from St. Louis County Circuit Court.—*Hon. J. W. McElhinney,* Judge.

AFFIRMED.

STATEMENT.

The case is here on a second appeal. In the statement of facts on the first appeal (see 89 Mo. App. 270 et seq.) the pleadings, the portions of the contract upon which the pleadings are predicated, the history of the doings and transactions of all the parties in interest in respect to the sawmill and logs, are fully set forth. All the legal questions involved in the controversy were adjudicated on the first appeal and the judgment was reversed and the cause remanded to try a single issue of fact, to-wit, whether or not Short & Kilgore had kept and performed the contract prior and up to June 15, 1896, at which time a substitutional contract was made between plaintiff and defendant herein superseding the one upon which the suit was brought.

After the cause was remanded the venue was changed from Butler to St. Louis county.

At the October, 1901, term of the St. Louis County Circuit Court the issues were, by agreement of parties, submitted to the judge of the court sitting as a jury. It developed on the trial that Short, of the firm of Short & Kilgore, was dead at the time the assignment of the right to receive and to sue for and recover the $1,500 sued for in this suit was made to plaintiff by Kilgore, for the firm of Short & Kilgore.

Plaintiff offered and read in evidence receipts and drafts showing that defendant Nickey had received payment in full for all logs he had furnished the mill from the date of the contract, September 10, 1895, up to and including June 15, 1896.

About June 4th, Nickey attached the mill in a suit he commenced against Short & Kilgore. Plaintiff, under the contract of June 15, 1896, took possession of

the mill and continued to operate it until January 21, 1897, when he surrendered it to the defendant under a contract in which the following stipulations are found:

"That the said party of the first part hereby surrenders and delivers to party of the second part possession of the sawmill of said party of the second part, located at Harveill, Missouri, of which party of the first part has had possession under contract with said party of second part; and said party of the second part hereby accepts possession of said sawmill and agrees that the same at the date of receipt by him is in as good condition, natural wear and tear excepted, as when delivered by him to party of the first part. . . .

"But it is stipulated and agreed, that the execution of this agreement shall not be taken or construed as a waiver of any right or claim for damages by reason of the breach, if any, by either party hereto, of any previous contract between the parties hereto, except as herein specially waived and released."

Before the trial was commenced plaintiff filed an application for a continuance on account of the absence of John H. Douglas and A. H. Woerheide. Douglas resided in the State of Arkansas. His mileage and witness fees had been tendered him and he promised to attend the trial. On the day before the cause was set for trial, plaintiff's attorney received a telegram from Douglas' physician stating that Douglas was seriously ill and unable to be present at the trial. Among other things the application stated that Douglas would swear to if present was, that the mill was in as good condition when he stopped running it for plaintiff as when he first took charge of it. The application stated that in addition to what was stated in Woerheide's deposition he would testify, if present, that Short & Kilgore performed the contract of September 10, 1895, upon their part in all respects until the latter part of May, 1896, when the attachment was levied, and that further performance was prevented by defendant, and that the

mill, "together with the machinery and appliances thereof, was in as good condition, natural wear and tear only excepted, as when Short & Kilgore took possession thereof under the contract of September 10, 1895." The court ruled that the non-attendance of Douglas did not afford plaintiff any ground for a continuance. Thereupon defendant agreed and consented that if Woerheide was present he would testify as set forth in the application. The court thereupon overruled the application.

After Woerheide's deposition (taken before the first trial, and which was directed to the payment for logs, etc., by Short & Kilgore, but not to the condition of the mill or machinery when plaintiff took possession of it under the contract of June 16, 1896), was read in evidence, plaintiff offered to read from the application for a continuance what it was alleged and admitted Woerheide would swear to if present, to-wit:

"That at the time the American Hardwood Lumber Company began operating said mill under the contract of June 15, 1896, the same, together with the machinery and appliances thereof, was in as good condition, natural wear and decay only excepted, as when Short & Kilgore took possession thereof under the contract of September 10, 1895," which was objected to because it was not stated that the witness saw the mill and machinery when delivered to plaintiff. The objection was sustained, to which ruling plaintiff then and there excepted.

Defendant testified that within four or five days after May 15, 1896, plaintiff sent Douglas to take charge of the mill and that Short & Kilgore had nothing to do with the mill after that time; that when Douglas took charge the mill was racked and damaged; that one or two saws were broken and a large piece cut out of the saw-cab, which was of cast iron, rendering it worthless and damaging it a thousand dollars; that the engine was broken and damaged five or six hundred dollars.

Robert Rice, a witness for defendant, testified that

he tempered a chisel for Kilgore, who with the help of another man cut a piece out of the saw-cab and that the cab never did any good afterwards; that he was a sawyer and such a cab costs from two thousand to twenty-five hundred dollars.

Plaintiff, in rebuttal, offered and read in evidence the pleadings and judgment rendered in the Organ Circuit Court in the suit of Nickey v. Short & Kilgore and American Hardwood Lumber Company, which are set forth in the statement and opinion on the first appeal of this cause (89 Mo. App. 270).

At the request of plaintiff the court gave the following declarations of law:

"1.   The court declares the law to be that if the firm of Short & Kilgore paid to defendant the sum of $1,500 as security for the performance upon their part of the contract of September 10, 1895, read in evidence; that said Short & Kilgore substantially performed said contract upon their part, from its date until on or about the 15th day of June, 1896; that on or about said 15th day of June, 1896, defendant refused to further perform said contract upon his part, or to permit said Short & Kilgore to further perform the same upon their part, and that said Short & Kilgore transferred all their interest in said $1,500 to plaintiff, then plaintiff is entitled to recover of defendant the sum of $1,500, together with interest from the institution of this suit.

"2.   The court declares the law to be, that the contract of June 15, 1896, entered into between defendant and plaintiff, amounted to an abandonment by defendant of the contract of September 10, 1895, between himself and Short & Kilgore.   And the court further declares, that if prior to the making of said contract of June 15, 1896, said Short & Kilgore had substantially performed the contract of September 10, 1895, upon their part, and that thereafter said Short & Kilgore assigned to plaintiff all their interest in the $1,500

deposited as security for the contract of September 10, 1895, then the plaintiff is entitled to recover.''

The court refused the following:

"3. The court declares the law to be, that if on or about the 4th day of June, 1896, defendant without reasonable grounds therefor, instituted an attachment suit against Short & Kilgore, and caused the writ issued in such suit to be levied upon the timber and other property of said Short & Kilgore, situated at the sawmill mentioned in the contract of September 10, 1895, between defendant and said Short & Kilgore, and that such writ was levied upon said property; then the act of defendant in instituting such suit and causing such levy to be made, amounted to a prevention by him of the further performance by Short & Kilgore of the contract of September 10, 1895.

"4. The court declares that the fifteen hundred dollars deposited with defendant by Short & Kilgore, to secure the performance of the contract of September 10, 1895, was intended by said parties as a penalty and not as liquidated damages.''

Of its own motion the court gave the following:

"5. The court declares the law to be that if on or about the 4th day of June, 1896, defendant without reasonable grounds therefor, instituted an attachment suit against Short & Kilgore, and caused the writ issued in such suit to be levied upon the timber and other property of said Short & Kilgore, situated at the sawmill mentioned in the contract of September 10, 1895, between defendant and said Short & Kilgore, and that such writ was levied upon said property, then the act of defendant in instituting such suit and causing such levy to be made, amounted to a prevention by him of the further performance by Short & Kilgore of the contract of September 10, 1895, until such attachment was released.

"6. The court declares the law to be, that if the court sitting as a jury should find, that the co-partner-

ship firm of Short & Kilgore, composed of Sampson Short and Hugh L. Kilgore, was dissolved, and said partners ceased to transact business as such, sometime prior to the death of said Sampson Short; that said Sampson Short died sometime in the year 1898, and that thereafter, in the year 1899, the said Hugh L. Kilgore signed and undertook to execute, in the name of said firm of Short & Kilgore, the assignment to the American Hardwood Lumber Company, dated September 12, 1896, offered in evidence; then the court should find that such assignment is void and of no effect to transfer to plaintiff the alleged cause of action sued upon and the court should find for the defendant.''

Judgment was rendered for defendant. In four days thereafter plaintiff filed the following motion for new trial:

''Comes now the plaintiff in the above-entitled cause, and moves the court to set aside the judgment therein and grant it a new trial, and as grounds for said motion states:

''1.   That the court erred in admitting incompetent, illegal and improper evidence offered by the defendant, against plaintiff's objections thereto.

''2.   That the court erred in excluding competent, proper and legal evidence offered by plaintiff.

''3.   That the court erred in its findings of facts.

''4.   That the court erred in refusing proper and legal declarations of law requested by the plaintiff.

''5.   That the court erred in granting improper and erroneous declarations of law requested by defendant.

''6.   That the court erred in making improper and erroneous declarations of law of its own motion.

''7.   That the judgment is against the law, the evidence and the weight of the evidence.

''8.   That the findings of fact of the court are not supported by the evidence, and are contrary to the weight of the evidence.

"9.   Because the judgment should have been for the plaintiff.

"10.   Because the court erred in overruling plaintiff's motion and application for a continuance."

After hearing the motion the court made the following order:

"The motion of the plaintiff for a new trial heretofore filed herein, having been fully considered, it is ordered and adjudged by the court, that said motion be, and the same is hereby sustained on the sixth ground stated therein, that is to say, that the court erred in making improper and erroneous declarations of law of its own motion.   And it is accordingly ordered and adjudged by the court that the judgment heretofore entered herein, on the 25th day of November, 1901, be, and the same is hereby set aside and vacated, and that a new trial be and hereby is granted herein.   Cause ordered continued."

Defendant in due time filed a motion to set aside the order granting a new trial which motion the court overruled and defendant appealed.

*E. R. Lentz* and *W. H. & Davis Biggs* for appellant.

(1)   If the judgment is for the right party, upon the undisputed or admitted facts, the trial court should not disturb the verdict, notwithstanding error in giving or refusing instructions.   Homuth v. Railroad, 129 Mo. 629; Bartley v. Railroad, 148 Mo. 142; Link v. Prufrock, 85 Mo. App. 623; Wagoner v. Edison Elec. Co., 82 Mo. App. 300.   (2)   A new trial should not be granted, except for error that is prejudicial to the substantial rights of the complaining party, upon the merits of the case.   Ittner v. Hughes, 133 Mo. 679; Theille v. Railroad, 140 Mo. 339; Bank v. Fitz, 76 Mo. App. 365. (3)   It is one of the governing rules, in passing upon motions for a new trial, to deny it, where the trial court is not satisfied that a different result would likely ensue

on a second trial. 1 Haynes on New Trial, par. 85; Rickroad v. Martin, 43 Mo. App. 603.

*Walther & Muench* and *Phillips & Phillips* for respondent.

(1)   Defendant having pleaded specific violations of the contract of September 10, 1895, the issues should have been confined to those breaches and it was error to permit defendant to introduce evidence as to other violations.   Reed v. Hoyt, 51 N. Y. Supp. 127; Muller v. Gillick, 66 Mo. App. 506; Hester v. Fidelity Co., 69 Mo. App. 194; Kendall v. Vallejo, 1 Cal. 371; McGuire v. Quintana, 52 Cal. 427; Hyde v. Hazel, 43 Mo. App. 668.   (2)   To make out a prima facie case, plaintiff was required to prove the payment of the security fund, the termination of the contract by defendant and the assignment of the fund to plaintiff.   It was for defendant to plead and prove any violation by Short & Kilgore which entitled him to retain the fund.   Potter v. McPherson, 61 Mo. 240; Chaude v. Shepard, 122 N. Y. 397.

BLAND, P. J.—Declaration of law No. 6, given by the court, is erroneous.

The common-law rule of survivorship in one member of a firm on the death of the other, has not been abrogated in this State (Avery v. The Kansas City & Southern R'y Co., 113 Mo. 561; Judy & Co.'s Surviving Partner v. Mfg. Co., 60 Mo. App. 114), and Kilgore, as the surviving partner of the firm of Short & Kilgore, had the legal right to assign the *chose* in action in suit to plaintiff.

The only issue of fact for trial was whether or not Short & Kilgore had performed their part of the contract of September 10, 1895.   On June 15, 1896, this contract, by the consent of the defendant and Short & Kilgore, was put an end to, and a new contract was made by and between plaintiff and defendant, in respect to the running of the mill and the furnishing of

logs. The inquiry, therefore, as to the performance of the contract by Short & Kilgore was confined to the period of time running from September 10, 1895, to June 16, 1896.

The evidence is that on June 4, 1896, the defendant attached the mill and stopped its operation and that Short & Kilgore did not thereafter run the mill or have charge of it. In respect to the attachment, the court declared the law as stated in declaration No. 5, given of its own motion. The attachment suit was never tried, but was settled by the payment of $2,692.91 to defendant by Short & Kilgore through the plaintiff. Whether or not Nickey had reasonable grounds for the attachment, it seems to us, was not material in this suit. By the settlement of the attachment suit and the payment of the amount demanded by Nickey, both parties waived their right to have the grounds for the attachment inquired into. Therefore, we think the fifth declaration of law is inapplicable to the facts in the case and should not have been given.

The breach of the contract by Short & Kilgore, relied on by the defendant, was that Short & Kilgore had damaged the mill, machinery and engine in an amount exceeding the sum of $1,500.

The contract of September 10, 1895, contains the following stipulations:

"It is further understood and agreed that if the said party of the second part shall fail, neglect or refuse to keep and perform his part of this agreement they shall forfeit to the said party of the first part all the payments made to the said party of the first part under and by virtue of this agreement. . . .

"The said party of the second part further agrees to make all necessary repairs on the said machinery and buildings, to keep the said sawmill plant in good running order, and at the end of the term herein provided for to deliver the said land, sawmill plant and machinery to the said party of the first part, in as good

order as the same now is or may hereafter be put, less necessary wear and tear," etc.

In respect to the advance payment of the $1,500, the contract provides that, "said sum shall be taken and considered part payment for the timber so to be delivered by said party of the first part (Nickey) to the said party of the second part, and also to be held by the said party of the first part as security for the due and proper performance of said contract by the said party of the second part."

In respect to these provisions of the contract and to the answer of plaintiff, filed in the Oregon Circuit Court, we said, when this cause was here on the first appeal, that, "By its answer in the Oregon county case, the plaintiff herein alleged that the fifteen hundred dollars were deposited as a forfeit and as and for stipulated damages should Short & Kilgore fail to carry out the contract. We think this a correct construction of the contract; at any rate, the plaintiff is estopped to assert the contrary by its answer in the Oregon county case (Lilly v. Menke, 143 Mo. l. c. 146), and if it can be shown that prior to the execution of the contract of June 15, they did fail to keep and perform their contract of September 10, the defendant is entitled to retain the money." Lumber Co. v. Nickey, 89 Mo. App. (St. L.) l. c. 288.

Plaintiff proved that Short & Kilgore complied with the contract in every respect while they operated the mill, except that part which required them to deliver the mill and machinery to Nickey in as good order as when received by them, less necessary wear and tear. Plaintiff offered to prove that Short & Kilgore kept this part of the contract by the evidence of Woerheide as set out in the application for a continuance, but this evidence was excluded for the reason that the application did not state that Woerheide saw the mill when delivered to Short & Kilgore or when delivered to the plaintiff.

The statement of Woerheide in the application for a continuance was the expression of the witness's opinion as to the condition of the mill when received by Short & Kilgore and when delivered by them. Whether or not he was qualified to give the opinion is not disclosed by his own evidence or by any other evidence in the record. Defendant had admitted that if Woerheide was present he would swear to the facts stated in the application for a continuance, and while defendant did not waive his right to object to the competency or relevancy of the evidence, he did thereby waive his right to cross-examine Woerheide, as to his knowledge of the facts upon which he based his opinion, and we think, in the circumstances, it was error to exclude the evidence. When the application for a continuance was overruled, plaintiff was without other evidence to show the mill and machinery was not materially damaged while in the possession of Short & Kilgore. From the connection that Douglas and Woerheide had with the mill it seems to us that they would be able to testify in respect to its condition when it passed from the possession of Short & Kilgore to the plaintiff. They were both absent and the plaintiff was deprived of their evidence and, while we think the court did not err in overruling the application for a continuance, we think the absence of these witnesses and the exclusion of Woerheide's evidence put the plaintiff in a position where it was powerless to produce any evidence on the most vital issue of fact in the case.

On all the evidence heard the judgment was for the right party, independent of instruction No. 6 given by the court of its own motion. We are of the opinion, however, that the exclusion of Woerheide's evidence was error and from an examination of the whole record are convinced that in the interest of substantial justice a new trial should have been awarded.

The judgment is affirmed. *Reyburn* and *Goode, JJ.,* concur.