## STATE ex rel. SHIPMAN, Respondent, v. ALLEN et al., Appellants.

**St. Louis Court of. Appeals, April 16, 1907.**

1. **ATTACHMENT: Action on Bond: Attorneys' Fees.** In an action on an attachment bond the plaintiff is entitled to recover reasonable attorney's fees for resisting the attachment and where no stipulated fee is agreed upon, the legal inference is that he agreed to pay a reasonable one.

2. **BILLS AND NOTES: Alteration: Guarantor.** The writing by a party of his name on the back of a promissory note after its delivery makes him a guarantor and is not such an alteration of the note as to release the maker from liability, though made without his consent.

3. ———: **Payment: Renewal Note.** The taking of a renewal note in satisfaction of an old one, marking the old one paid across its face, discharges the makers of the old note from liability thereon.

4. ———: ———: ———: **Waiver.** But in an action on an old note renewed in such manner, where the answer pleads facts showing there was no intention to deliver the note in the first place, this was inconsistent with the plea of payment and the plea of payment was therefore not available.

5. **LIMITATIONS: Absence from the State.** In order that absence from the State may stop the running of the Statute of Limitations against a cause of action, it must be shown that the persons seeking to invoke the bar of the statute resided

out of the State at the time, and an instruction, in an action in which the Statute of Limitations was invoked, based upon such absence, was properly refused, where it simply required a finding that the party had "moved" out of the State and "did not move back" until a given time, since this would not involve a finding that the party *resided* out of the State.

6. **ATTACHMENTS: Action on Bond: Partnership.** In an action on an attachment bond given on behalf of a firm, it was not error to permit other members of the same firm who did not sign the bond to appear, answer and file set-off to the same: this was not opposed to the principle that a partnership debt cannot be set off against a debt due by an individual member of the partnership.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED AND REMANDED.

*R. H. Davis* and *W. Cloud* for appellants.

(1) The ruling of the court on motion of L. L. L. Allen and J. Forsythe, requesting that they be permitted to enter their voluntary appearance and be made parties defendant, was properly sustained. State ex rel. v. Hudson, 86 Mo. App. 512; Green v. Conrad, 114 Mo. 665. (2) Instruction numbered 1 given on behalf of relator is erroneous in that: (a) The damages are not limited to securing a dissolution of the attachment. State ex rel. v. Fargo, 151 Mo. 280; Fry v. Estes, 52 Mo. App. 6. (b) Before traveling expenses can be recovered, it must be shown that they were necessarily incurred. State ex rel., 16 Mo. App. 478. (c) Counsel fees connot be recovered unless it is shown that a fee was paid, or contracted to be paid, and that it was reasonable. Shultz v. Morison, 3 Metc. (Ky.) 98. (3) Instruction numbered 8, requested by defendants, should have been given, and instruction numbered 4, given at the request of relator, should have been refused. It is a well-established rule of law that one who, at the request of the payee or holder and after delivery by the

maker, writes his name across the back of a note is a guarantor and not a maker. Stagg v. Linnenfelser, 59 Mo. 342; Burnham v. Gosnell, 47 Mo. App. 638; Cobyn v. Brokmeyer, 84 Mo. App. 649; Hill v. Combs, 92 Mo. App. 242; Adams v. Huggins, 73 Mo. App. 143; Adams v. Huggins, 78 Mo. App. 222. (4) And the signing of a note on the back thereof after it has been delivered to the payee does not amount to an alteration. Moore v. Bank, 22 Mo. App. 684. (5) Instruction numbered 3, given at the request of relator, should have been refused, and instructions numbered 2, 5, 6, and 7, requested by defendants, should have been given. The taking of the note, dated November 15, 1893, did not amount to a payment of the note sued on, being note dated May 15, 1893; unless it was so expressly agreed by the parties at the time. Appleton v. Kennon, 19 Mo. 637; Bank v. Peterman, 21 Mo. App. 512; Leabo v. Goode, 67 Mo. 126; Powell v. Charless' Admrs., 34 Mo. 485; Commiskey v. McPike, 20 Mo. App. 82; Shotwell v. Munroe, 42 Mo. App. 669; State ex rel. v. Wagers, 47 Mo. App. 431. (6) Instructions numbered 3 and 4, prayed by defendants, should have been given and instruction numbered 2, given at the request of relator, should have been refused. R. S. 1899, sec. 4282; Orr v. Wilmarth, 95 Mo. 216; Santer v. Leveridge, 103 Mo. 621. (7) Flying visits, after change of residence, will not stop the running of the exception. Johnson v. Smith, 43 Mo. 501; Rhodes v. Farish, 16 Mo. App. 437.

*R. H. Landrum* and *William B. Skinner* for respondent.

(1) The measure of damages in an action on an attachment bond, where the attachment has been defeated and where the facts are as disclosed by the record in this cause, is money expended by relator in traveling expenses and hotel bills, laid out in attending and preparing for trial of such attachment, reasonable com-

pensation for relator's time and such reasonable attorney's fees as may appear from the evidence, was needful and necessary in defending such attachment. Kelly v. Beauchamp, 59 Mo. 178. (2) A debt due a partnership cannot be set off against a debt by an individual partner. Weill v. Jones, 70 Mo. 561; Lamb v. Broloski, 38 Mo. 51; R. S. 1899, sec. 543; Boyer v. Hamilton, 21 Mo. App. 521; Kortjohn v. Seimers, 29 Mo. App. 276; Browning v. Hilig, 69 Mo. App. 594. (3) "The addition of the name of another party to a note, by a party in interest, after it has been executed will release the other parties to the note, and this is especially true as to a surety on the note." Higgins v. Harvester Co., 181 Mo. 309; Bank v. Frick, 75 Mo. 180; Hord v. Taubman, 79 Mo. 102; Lunt v. Silver, 5 Mo. App. 186. (5) Whether or not the note executed by relator, as surety for W. S. White, dated May 15, 1893, was paid, by agreement between said W. S. White and L. L. Allen, with the note dated November 15, 1893, and the first named note cancelled by said Allen, was a question of fact for the jury, under proper instructions. Hayden v. Luffenburger, 157 Mo. 88; Block v. Dorman, 51 Mo. 31; Powell v. Charless' Admr., 34 Mo. 485. (6) The rule of law is well settled in this State that in order to bring a case within the exemption of the Statute of Limitations, the proof should show two facts: first, that at the time the cause of action accrued the debtor was a resident of this State, and second, that thereafter he departed from and resided out of the State. R. S. 1899, sec. 4842; Mastin v. Tilleston, 33 Mo. App. 622. (7) Where a judgment is for the right party, it will not be reversed where errors complained of do not materially effect merits of action, and where a second trial would not result differently. Jones v. Poundstone, 102 Mo. 245; Mitchell v. Bradstreet, 116 Mo. 226; R. S. 1899, sec. 865.

STATEMENT.—Action on attachment bond. Verdict and judgment for plaintiff for $400, from which defend-

ants appealed. The facts are, in 1901 defendants brought suit by attachment against plaintiff herein, in the Lawrence Circuit Court, alleging in their affidavit for the attachment, that Shipman was a non-resident of the State of Missouri, and had absconded and absented himself from his usual place of abode in this State, so that the ordinary process of law could not be served upon him. On the filing of the affidavit and the approval of the attachment bond, a writ of attachment was issued and served by attaching and levying upon certain real estate in the county of Lawrence, as the property of Shipman. Shipman appeared to the action, employed counsel and filed a plea in abatement of the attachment, which plea was tried, resulting in a verdict and judgment for Shipman, which judgment was affirmed on appeal by this court. The present action is on the bond to recover the cost and expenses, value of time and reasonable attorney's fees in the defense of the attachment. The evidence tends to prove that reasonable attorney's fees and other costs and expenses to Shipman, in the defense of the attachment, aggregated from four to five hundred dollars. Defendants pleaded as a set-off, two promissory notes, one for $450, dated May 15, 1893, payable to Allen, Stark & Co., due six months after date and signed by J. N. Scott, J. A. White, W. S. White and J. W. Shipman, and indorsed on the back by W. H. Smith. The other note was for the same amount, payable to the same payees and dated November 15, 1893, due three months after date and signed by W. S. White, George Davis, George Messick, and J. W. Shipman. Three payments were indorsed on the back of this note: One July 18, 1895, for $32.50; one November 7, 1895, for $11, and one May 4, 1896, for $38. The reply, as a defense to the first note, alleged in substance, first, that it was barred by the ten-year Statute of Limitations; second, that it had been paid; and third, that Shipman signed the note for the accommodation of and

as surety for J. A. White, and that after the note had been executed and delivered to the payees, they, without his knowledge and consent, procured Smith to indorse it. As a defense to the second note, the reply alleged, in substance, that Shipman signed it with the understanding and on condition that it should not be delivered, or become binding as a promissory note, unless signed by W. S. White and J. N. Scott; that the payees were informed of this fact before the note was delivered to them but nevertheless accepted the note. On the trial the set-off pleaded on the second note was abandoned. In respect to the first note, the evidence shows that L. L. L. Allen, J. F. Stark, A. Forsythe and J. Forsythe composed the firm of Allen, Stark & Co., and that L. L. Allen was the active business manager of the firm. In 1893 the firm sold a crusher to W. S. White, for the purchase price of which the note of May 15, 1893, was given. A short time after its execution and delivery to the payee, at the request of Allen, W. H. Smith wrote his name across the back of the note, without the knowledge or consent of Shipman. When this note matured, White applied to Allen for the privilege of renewing it. Allen agreed that the note might be renewed for three months, but requested White to get George Davis to sign it. White testified that he got George Davis, Shipman and Messick to sign the note and then took it to Allen to show him that he had Davis' name upon the note. Allen took the note, looked at it and said "it is good enough." White also testified as follows:

"Q. What did you tell him? A. I told him I had agreed to have the other parties on it that was on the old note. He said it was 'good enough.'

"Q. He kept it? A. Yes, sir.

"Q. You wanted to take it back with you? A. Yes, sir; I wanted to go ahead and fix it up.

"Q. You objected to him keeping it? A. I wanted to get the parties I had agreed to on it."

Allen did not surrender up the old note to White; but in his deposition taken in another suit, he testified that he took the renewal note in payment and satisfaction of the first one, marked it "paid" across its face and filed it away; that after giving his deposition, he found the two notes pinned together and kept them but did not know whether the old note was marked "paid" or not. From the evidence it is inferable that there is a slight evidence of some mark on the face of the note, perhaps made in pencil, but so dim as to be illegible. Allen testified that no payments were ever made on either of the notes, other than those indorsed on the back of the renewal note. After Shipman learned that Smith had indorsed the note, he at all times denied any liability thereon and neither made or consented that any payments should be made or indorsed on either of the said notes. There was some evidence tending to prove that Shipman, with his family moved from his home in Lawrence county to Tulsa, Indian Territory, and remained there until 1905, when he moved back to his farm in Lawrence county. A portion of this time he was on the Townsite Commission to appraise town lots in Indian Territory, and at the same time had an interest in crops cultivated in Indian Territory by his sons.

BLAND, P. J. (after stating the facts).—1. The court gave the following instruction for plaintiff:

"1. The court instructs the jury that in this case it is admitted that the defendants Allen, Stark and Forsythe executed the bond sued on and read in evidence; that the action in which the attachment was sued out has been finally determined; that the attachment under which relator's property was levied upon has been finally determined in relator's favor and the attachment dissolved, and the only matter for the jury to determine in relator's suit is the amount of damages, if any, which he has sustained in defending such attachment, and in

assessing such damages you will allow him for all money you may find from the evidence he has expended for traveling expenses and hotel bills in going to employ and consult counsel, in attending place of trial, in preparing for such trial and such reasonable compensation for his time and reasonable attorneys' fees, as you may find from the evidence was needful and necessary in defending such attachment."

Defendants contend that the instruction does not limit the damages to securing a dissolution of the attachment, but includes the defense of the entire suit. The instruction will not bear this construction. Only the attachment suit is anywhere mentioned in the instruction, and to find there was another branch of the suit, or to allow plaintiff compensation for attorneys' fees, etc., expended in the defense of the main suit, the jury would have to go outside of the instruction. Plaintiff's evidence tends to show that $250 was a reasonable attorney's fee for defending the attachment, but there is no evidence showing or tending to show that he had paid, or had contracted to pay, his counsel any stipulated sum as a fee. For this reason defendants contend the court should not have submitted the assessment of any attorneys' fees to the jury. In a suit on an attachment bond, a plaintiff is entitled to recover reasonable attorneys' fees in the defense of the attachment. [Kelly v. Beauchamp, 59 Mo. 1. c. 179.] Where an attorney has no contract with his client touching his compensation for services to be rendered, he is, after the services have been rendered, entitled to recover of his client reasonable compensation therefor. As there was no direct evidence that plaintiff had paid or agreed to pay his attorneys a stipulated fee for defendang the attachment, the legal inference is that he agreed to pay them a reasonable one, and we think the instruction properly left it to the jury to assess reasonable attorneys' fees.

2. The court gave the following instruction for plaintiff:

"4. The court instructs the jury that if you find from the evidence that after the note declared on in defendants' counterclaim, dated May 15, 1893, was delivered to L. L. Allen for Allen, Stark & Co., the same was while in the possession of said Allen, altered at his instance by writing the name of W. H. Smith across the back thereof, and that such alteration and writing was without the consent of relator Shipman then defendants cannot recover on their counterclaim and your verdict should be for relator and against defendants on such counterclaim."

And refused the following asked by defendants:

"8. The court instructs the jury that if they believe from the evidence in this case that after the delivery of the note described on the first count of defendants' counterclaim, being the note read in evidence for $450, dated the fifteenth day of May, 1893, and executed by Wm. H. White, the principal, to Allen, Stark & Co., said note was signed on the back thereon by one W. H. Smith at the request of L. L. Allen, or Allen, Stark & Co., then said Smith was in law a guarantor, and said note was not changed or altered and did not release plaintiff therefrom."

By writing his name on the back of the note after its delivery to payees, Smith became bound only as a guarantor. His signature did not alter the note and his obligation was separate and distinct from that of the makers. [Corbyn v. Brokmeyer, 84 Mo. App. l. c. 652, and cases cited.] Was his contract of guaranty an alteration of the note? This question is answered in the negative by Judge ELLISON, in Burnham v. Gosnell, 47 Mo. App. l. c. 639. It follows that the court erred in giving plaintiff's instruction and refusing that asked by defendants.

3.    The court gave the following instructions for plaintiff:

"3.    The court instructs the jury that if you find from the evidence that the note declared on in the defendants' counterclaim, dated May 15, 1893, was paid by William S. White by delivering to L. L. Allen for Allen, Stark & Co., a note for even amount dated November 15, 1893, signed by Wm. S. White and others, and that said Allen accepted such notes for Allen, Stark & Co., and was authorized to do so in lieu of and in payment of said note dated May 15, 1893, then your verdict will be in favor of relator and against defendants on their counterclaim."

And refused the following asked by defendants:

"The court instructs the jury that under the pleadings and evidence in the case the note sued on in this action was not paid with the note signed by W. S. White, J. W. Shipman, George Davis and others and delivered to L. L. Allen by W. S. White."

Ordinarily, nothing but money will satisfy a debt, but a creditor and debtor may agree on some other medium of payment and if, as Allen swore in his deposition, he took the renewal note in payment and satisfaction of the old one and marked it "paid" across its face, the makers of the old note were discharged from all liability thereon.   But as relator, in his answer to the counterclaim stated facts inconsistent with the idea of any intention of the maker of the note to deliver it to Allen this instruction was opposed to the issues as made by the pleadings and should not have been given.

4.    Defendants asked the following instruction, which the court refused:

"The court instructs the jury that if they believe from the evidence in this case that plaintiff Shipman on or about the months of February or March, 1901, moved with his family to the Indian Territory, and did not move back to Missouri until about July, 1905, then the court

instructs the jury that the Statute of Limitations did not run against the note sued on in this case and said note is not barred by the Statute of Limitations, and on that plea the issue should be for the defendants."

If the plaintiff moved with his family to Indian Territory, in February or March, 1901, and resided there or elsewhere out of the State of Missouri, until July, 1901, when he moved back to this State, the note was not barred, as to him, by the ten-year Statute of Limitations. The instruction, however, ignored the fact of residence in the territory or elsewhere, and for that reason was properly refused. What is meant by residence, within the meaning of the Statute of Limitations, is a mixed question of law and fact and should be defined by instructions to the jury. The second clause of the section (R. S. 1899, sec. 4282), upon which the instruction was intended to be based, provides: "And if, after such cause of action shall have accrued, such person (defendant) depart from and reside out of the State, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." In Miller v. Tyler, 61 Mo. 401, the Supreme Court, construing this clause of the statute, ruled: "Where one departs from the State, leaving a residence therein, and afterwards his family abandon that dwelling-place and remove to the house of a relative in another county, he will be held to have no usual place of abode within the State, where service may be had upon him, and under a proper construction of section 16, article 2 of the limitation law, the statute will cease to run in his favor." In Rhodes v. Farish, 16 Mo. App. 430, it was held: "An 'absence from the State' such as will, for a considerable period, render it impossible to obtain such service of process as will support a general judgment, is such an absence as will interrupt the running of the Statute of Limitations." An instruction bottomed on the second clause of section 4282,

supra, should be drawn in harmony with these decisions.

5.   As before stated, the firm of Allen, Stark & Co., was composed of L. L. Allen, L. L. L. Allen, J. F. Stark, J. Forsythe and A. Forsythe. The attachment suit was brought by the firm. The attachment bond was only executed by L. L. Allen, A. Forsythe and J. F. Stark. On motion of defendants and of L. L. L. Allen and J. Forsythe, the latter two, over the objection of plaintiff, were made parties defendant and were, with the other defendants, permitted to plead the set-offs hereinbefore mentioned. If this was error, then the judgment should be affirmed, notwithstanding the errors noted above. A partnership debt cannot be set off against a debt due by an individual member of the partnership. [Lamb v. Brolaski, 38 Mo. 51; Weil v. Jones, 70 Mo. l. c. 561.] But L. L. L. Allen and J. Forsythe, as members of the firm of Allen, Stark & Co., had a direct interest in this suit, for the reason that any judgment rendered against the makers of attachment bond would, in effect, be a debt against the partnership.   They were, therefore, proper parties. [Green v. Conrad, 114 Mo. l. c. 655, 21 S. W. 839; State to use v. Hudson, 86 Mo. App. 501.]

For errors herein noted, the judgment is reversed and the cause remanded.   All concur.