STATE ex rel. SHIPMAN, Respondent, v. ALLEN,
et al., Appellants.

St. Louis Court of Appeals, June 4, 1908.

1. PRACTICE: Estoppel by Pleading. In an action to which the
defendants filed two counterclaims on two promissory notes
and the plaintiff in reply alleged that the second note was exe-
cuted as a renewal of the first, but pleaded that it was never
delivered and therefore was not binding, he was estopped by
so pleading to assert in defense of the first note that the sec-
ond was given in payment of the first.

2. ———: ———: Abandoned Pleading. And in such action
where the plaintiff in his answer to the counterclaim on the
second note alleged facts which showed a non-delivery of
such note, and the defendants abandoned their counterclaim
on such note, the plaintiff on the second trial of the case after
it had been to the Court of Appeals, although he amended his
reply to the second counterclaim by striking out the allega-
tions showing that it was not delivered, was nevertheless es-
topped, by such former pleading and by inducing the defend-
ants to abandon their counterclaim on said second note, to
assert in defense to the first note that the second was given
in payment of the first.

3. ———: ———: Statute of Limitations: Partial Payments. In
an action where the defendants filed two counterclaims on two
promissory notes, the second of which was given in renewal
of the first, and the plaintiff, by his pleading the failure to
deliver the second, was estopped to deny that it was delivered
in payment of the first, it did not follow that he was also es-
topped to show, on his plea of the Statute Limitations to the
first note, that certain partial payments were made on the
second note and not on the first; the estoppel only went to the
facts covered by the pleading.

4. STATUTE OF LIMITATIONS: Partial Payments: Renewal
Note. Where one note was given in renewal of another, in
an action on both of said notes, where it was shown that the
principal on the notes in making partial payments directed
their application on the second note, this would not prevent the
running of the Statute of Limitations in favor of a surety on
the first note, who treated the second note as invalid, on the
ground that the partial payments were on the debt and not on
the particular note; while partial payments by principal will
stop the running of the statute as to the surety, such payments

by the principal on a renewal note would not stop it as to the surety on the original note.

5. ———: **Residing out of State: Ordinary Process of Law.** The Statute of Limitations will cease to run as to a debtor who departs from and resides elsewhere with his family and has no place of abode in this State where service of process can be obtained, although such debtor may occasionally return to this State for the purpose of attending court. Where a debtor moved with his family out of the State and remained temporarily, and during the time made several visits to the State, attending court and looking after other business, it was a question for the jury as to whether he had departed from and resided out of the State so as to prevent the Statute of Limitations from running in his favor against a note which he owed in this State.

Appeal from Stone Circuit Court.—*Hon. John T. Moore,* Judge.

REVERSED AND REMANDED.

*W. Cloud* and *R. H. Davis* for appellants.

*R. H. Landrum* and *William B. Skinner* for respondent.

GOODE, J.—This is an action on an attachment bond executed by L. L. Allen, A. Forsythe and J. F. Stark, three of the defendants. The other two defendants are L. L. L. Allen, and J. Forsythe. Those five men composed a firm styled Allen, Stark & Co. This firm in May 16, 1893, sold to W. S. White an ore crusher for which White gave his promissory note of said date for $450 payable in six months, with J. A. White, J. N. Scott and J. W. Shipman, who is the relator in the present action, as sureties. Said note was endorsed on the back by W. H. Smith, at the request of L. L. Allen, some time after its execution and delivery to the payees. When it matured November 15, 1893, L. L. Allen, one of the members of the firm of Allen, Stark & Co. and its active representative in the transactions with de-

fendants, told the principal in the note, W. S. White, an extension of the debt would be granted if a new note was given in lieu of the first one.     A note for $450, dated November 15, 1893, and payable in three months, was made out by Allen and given to W. S. White to be signed by himself as principal and, he says, by George Davis and others, presumably the sureties on the first note, as sureties.   It was signed by W. S. White as principal and by George Davis, George Messick and J. W. Shipman, the relator, as sureties.   The testimony goes to show relator signed it on an understanding that it was not to be delivered to L. L. Allen, for the firm of Allen, Stark & Co. until W. S. White had procured the signatures of George Davis, J. N. Scott, J. A. White and W. H. Smith, besides relator's own, as sureties.   After W. S. White had procured the signature of relator, J. W. Shipman, George Messick and George Davis, he happended to be in L. L. Allen's bank on other business, and showed the note in that condition to said Allen, when the latter took and kept it, saying it was good enough with the names already on it.   W. S. White protested against this, saying his agreement with the parties who had signed was it was not to be delivered until the other sureties on the first note had signed it.   Allen retained it.   The foregoing is according to the testimony of W. S. White given for relator.   The testimony in regard to who was to sign the second note is not altogether consistent with the names actually on it. George Davis signed it though he had not signed the first note.   It seems this was done at Allen's request. George Messick also signed it.   He was not on the first note and no explanation is given regarding his signature.   We are safe in saying the testimony for relator goes to show he signed on condition that the signatures of certain other persons as sureties were to be procured, and that some of the signatures that were to be procured, before it was delivered, were not on it when Al-

len got and kept it, and that Allen was notified at the time he took the note of the condition on which relator, signed.    Allen himself gave testimony tending to show no conversation passed between him and W. S. White, at the time the note of November 15th was turned over to him (Allen) for the firm of Allen, Stark & Co. Allen's testimony too, goes to prove the original note was treated by him, as the representative of his firm, as having been paid by the second one and was marked paid across the face.    Instead of being surrendered to the makers, it was placed among the canceled notes in the bank of which Allen was cashier.    Three payments were made and endorsed on the note of November 15th, as follows:    January 18, 1895, $32.50;  November 7, 1895, $11; May 4, 1896, $38.    Relator Shipman turned over to Allen the last of those payments, but swore he did so merely to accommodate the principal W. S. White and one W. G. Craig, who furnished the money and sent it by relator, as he was going to Pierce City for the mines where the ore crusher was located.    Allen gave a receipt saying the payment was received of W. G. Craig, secretary of the Spring River Mining Company, through J. W. Shipman, and that the money was to be credited on the note of W. S. White, George Messick, et al., namely; the second note.    In January, 1901, an action was instituted by the payees on said note against all the signers, including relator.    Relator pleaded in defense the condition on which he had signed it as above stated, and after the taking of some depositions this action was dismissed. In August, 1901, Allen, Stark & Co. filed suit on both notes, and in aid of the action sued out a writ of attachment against the relator Shipman, presumably on the ground of non-residence. The plaintiffs in that action elected to proceed to trial on the note of May 15th and dismissed as to the other. Relator obtained judgment on the plea in abatement dissolving the attachment, and at the trial on the merits,

after evidence had been taken and the case submitted to the jury, plaintiffs took a nonsuit as to said note of May 15th. What the issues were on the merits is not shown in the present record. Relator having succeeded in defeating the attachment, instituted the present action to the March term, 1906, of the Lawrence circuit court on the attachment bond, which had been executed, as said, by only three of the firm of Allen, Stark & Co. The two other members of the firm, L. L. L. Allen and J. Forsythe, were made parties defendant as being parties in interest, a ruling approved by this court on a former appeal of the present case and not now in question. [State ex rel. v. Allen, 124 Mo. App. 465, 476, 103 S. W. 1090.]

We will state enough of the pleadings in this case to show the issues joined. Suffice to say as to the petition that it asks damages for three items: $250 for fees of relator's counsel earned in defense of the attachment action; $88.40 for railroad fare, traveling, lodging and boarding expenses incurred by relator in coming to Missouri and preparing for the trial of the attachment action, and $114 as the value of the time relator lost in looking after said action. The answer of defendants admitted the execution of the attachment bond and denied the other averments of the petition. It then set up two counterclaims against relator. One of said counterclaims is based on the note of May 15, 1893, less the aforesaid payments, which were alleged in the answer to have been made on said note. The other counterclaim is based on the note of November 15, 1893, on which the same payments are credited. In his replication relator said in defense of the counterclaim on the note of May 15th, that he signed the same as surety for W. S. White, but after the delivery of the note to Allen, Stark & Co. it was altered by said firm having one W. H. Smith sign his name thereto as maker without the knowledge and consent of relator. We held

on the previous appeal Smith signed the note as guarantor, and relator could not avail himself of the signing as a defense; so the alleged alteration of said instrument is out of the case. For further defense to the note of May 15th, the relator averred the payees Allen, Stark & Co. received from W. S. White the note for $450 dated November 15th, in full payment and satisfaction of the former note and hence defendants are not entitled to recover on it. In defense of the counterclaim based on the note of November 15th, relator averred he signed it on the condition stated supra, to-wit; an express agreement and understanding with the principal W. S. White, that he was to have certain other sureties sign before the note was delivered to the payees, and that relator was not to be bound unless said other sureties signed; that Allen, Stark & Co., defendants, had full knowledge of the agreement and condition when they obtained possession of the note. In another paragraph of the replication, relator averred the note of November 15th never was delivered to the payees, and set out the manner in which L. L. Allen retained it against W. S. White's protest, before the latter had procured the names of the sureties on the other note. For further defense to both notes, relator stated they showed on their faces more than ten years had elapsed since the cause of action on them had accrued, and denied it was true, as defendants alleged in their counterclaim, that relator, after the maturity of the notes, departed from and resided out of this State so the ordinary process of law could not be served on him. A rejoinder was filed by defendants to the replication of relator, and no point has been made about the propriety of this pleading. In the original rejoinder defendants admitted the portion of relator's replication averring the condition on which he signed the second note, and that said note never was delivered, but that L. L. Allen obtained possession of it from W. S. White

in the manner alleged by relator in his replication, and defendants offered to surrender said note to relator. Defendants further rejoined that this being true, the note of May 15th never had been paid, but only the partial payments above stated had been made on it. The case came to this court on the first appeal with the pleadings in the form stated and was treated as though the counterclaim based on the note of November 15th had been abandoned by defendants (loc. cit. 470). Indeed this seems to have been the theory of the parties. In passing on certain instructions given and refused, relating to the payment of the note of May 15th by the one of November 15th, we said:

"Ordinarily nothing but money will satisfy a debt, but a creditor and debtor may agree on some other medium of payment and if, as Allen swore in his deposition, he took the renewal note in payment and satisfaction of the old one and marked it 'paid' across its face, the makers of the old note were discharged from all liability thereon. But as relator, in his answer to the counterclaim stated facts inconsistent with the idea of any intention of the maker of the note to deliver it to Allen this instruction was opposed to the issues as made by the pleadings and should not have been given."

The instruction which this court said should not have been given, was one given for plaintiff which declared if the jury found the note of May 15th was paid by delivering to L. L. Allen, for Allen, Stark & Co. a note of even amount dated November 15, 1893, signed by W. S. White and others, and that said Allen accepted the latter note for Allen, Stark & Co. and was authorized to do so, in lieu of and in payment of said note of May 15th, the verdict should be in favor of relator and against defendants on their counterclaim, to-wit; on the counterclaim based on the note of May 15th. The instruction was condemned because relator, in his answer to the counterclaim, had stated facts inconsist-

ent with the purpose to deliver the note of November 15th to the payees. In other words, we then adjudged that because the relator had alleged the note of November 15th was not delivered, he had no right to an instruction authorizing the jury to find it was delivered and accepted in payment of the note of May 15th. When the cause was returned for another trial, relator dismissed that portion of his replication which alleged non-delivery of the second note and stated how L. L. Allen obtained possession of it against the protest of the principal W. S. White. The venue of the case was changed to Stone county; where defendants filed an amended rejoinder to relator's replication. The purpose of filing said amended pleading was to set up the portion of relator's replication which he had dismissed as aforesaid. After quoting this matter from the replication, defendants averred they had, in their former plea, admitted the truth of it as alleged, and had offered to surrender possession of the note of November 15th, and abandoned their counterclaim on the same. Wherefore defendants alleged relator was estopped to plead payment of the first note by the second. Defendants then stated the facts substantially as relator had averred them regarding how L. L. Allen had obtained and kept said note, and alleged it never was delivered. These allegations were introduced independently of the plea of estoppel, for the purpose of answering the averment of relator that the note of May 15th had been paid by the later one; and in view of the facts alleged defendants asserted the first note was still a valid obligation, subject to the credit of the three partial payments aforesaid. Defendants further averred that after the maturity of said first note, to-wit, on or about March, 1901, relator departed from and resided out of this State until July, 1905. This averment was intended to meet the defense to the first note, of the Statute of Limitations. The facts regarding the depart-

ure of relator from this State and his residence else-
where are these; in March, 1901, he went to Tulsa,
Indian Territory.   Prior to said date he had resided
in Lawrence county on his farm, which, on leaving
for Tulsa, he leased to a tenant for two or three years
and subsequently to another tenant for one year.
After that and until relator's return, one or more of
his sons lived on the place and managed the farm.
Relator had twelve children, but the majority of them
were married.   Five children lived with him, and these
accompanied him to the Indian Territory where some
of his married children lived.   The reason he went
there was his wife was afflicted with cancer, did not
expect to live long and wished to see her children.   She
died twenty months later, and during said period
she, relator and the five children kept house in Tulsa.
Relator stayed in the Territory most of the time until
July, 1905, when he came back to Lawrence county
where he has resided since.   While in the Territory
he held the position of Town Site Commissioner under
the Federal government.   He voted in Lawrence
county and was there several times, say, five or six,
attending court and looking after business, and the
attachment suit and other actions instituted against
him by defendants on the notes in controversy.   While
in attendance on the court he could have been served
with process.   Relator was interested in the culti-
vation of land in the Territory and was also interested
in farming operations in Lawrence county, Missouri.

On the second trial relator had judgment and de-
fendants again appealed, assigning errors based
mainly on the rulings of the court in giving and re-
fusing instructions.   It seemed necessary to state the
facts thus fully to make clear the points raised and
decided on the present appeal.

1.   The court below rightly held the relator was
estopped by his replication from defending against

the note of May 15th on the ground it had been paid by the one of November 15th. It will be seen from what has been quoted of the opinion on the first appeal, that this point was then determined, and we adhere to the ruling. Relator did not help his cause by striking out the part of the replication in which he alleged the non-delivery of the second note. With said part of the pleading omitted, enough remained to show he asserted non-delivery of the second note because it was conditionally signed on an agreement that it was not to be delivered until other signers were procured. But if he had struck out all the matter in his replication relating to the conditional signing and non-delivery, nevertheless he would be estopped by pleading those matters prior to the first trial, coupled with defendants' admission of their truth and abandonment of the counterclaim on the second note. A strong case for an estoppel is presented by these facts. Relator cannot be heard to say the first note was paid by the second, in the face of his allegation that the second note was not delivered and, therefore, did not become an obligation. It should be remembered the defendants at first counted on the second note as a valid demand against relator, and only relinquished this demand when he pleaded non-delivery of the note. To permit him now to treat it as a payment of the first note would be utterly inconsistent with his former petition. We cite a few of a long line of authorities in this State, and elsewhere, which might be cited against the right of a party to rely on such contrary theories. [Brown v. Bowen, 90 Mo. 184, 2 S. W. 398; Turner v. Lord, 92 Mo. 113, 4 S. W. 420; Bensieck v. Cook, 110 Mo. 173, 19 S. W. 642; Lilly v. Menke, 143 Mo. 137, 44 S. W. 730; Nalle v. Thompson, 173 Mo. 595, 73 S. W. 599; Beottger v. Roehling, 74 Mo. App. 257; Lumber Co. v. Nickey, 89 Mo. App. 270; s. c., 101 Mo. App. 20, 73 S. W. 331;

Hill's Admr. v. Huckabee's Admr., 70 Ala. 183; Hooker v. Hubbard, 102 Mass. 239.] In Lilly v. Menke et al., which was a suit to partition certain devised property, the plaintiffs had originally alleged the widow of the testator to whom the will gave only a life estate, had renounced the will and elected to be endowed absolutely of one-half the estate, whereby only one-half the estate was left subject to the will. Under this allegation a decree in partition was rendered, setting apart half the estate to the heirs of the widow. The case went to the Supreme Court with the pleadings in that condition and was reversed; but the court treated the cause as if the widow had renounced the will. After the remand the plaintiffs filed an amended petition and left out the averment that the widow had renounced the will. Thereupon defendants in their answer copied the allegation of the first petition regarding the renunciation, and averred the death of the widow and their right to one-half the estate by virtue of said renunciation. The plaintiffs then denied the renunciation by the widow which previously they had alleged, denied she had become seized in fee of one-half the estate, and on an adverse decision below appealed to the Supreme Court. The object of this change of front was to enable the plaintiffs to show the widow acquired only a life estate in all the property instead of a fee simple to half of it. The Supreme Court held the plaintiffs were estopped by their first pleading and used strong language against such a practice; declaring that if tolerated it would encourage deceit, and there never could be an end to litigation if, when a suitor was defeated on grounds assumed by himself, he might avoid the consequence by contradicting what he had before alleged. The case of Hooker v. Hubbard is so nearly identical in its facts with the one at bar as to furnish an exact precedent. That defendant was sued on a promissory note and answered the plaintiff had ob-

tained possession of the note fraudulently, the defendant having signed it in blank and delivered it to the plaintiff's agent on an agreement that it was to be made payable to plaintiff and by him first endorsed, and the defendant should be liable only as a co-surety and not as indorser. Further that said note was executed in renewal of a prior note, the defendant had signed for the accommodation of the plaintiff and the second note was signed on the understanding that plaintiff would sign above defendant's name, negotiate it and apply the proceeds in payment of the first note. It appeared the defendant had been sued on the first note, and in defense of the action had pleaded it was paid by the execution and delivery of the second one. On. these facts the court estopped him to defend against the second note on the theory that it was not delivered or the conditions on which it was executed fulfilled, and hence did not become an obligation. The court said the second note could only be effectual as a payment of the first one if it was a valid and binding instrument; and having been treated as such in a former action, and the defendant having prevailed on that ground, he could not afterwards be heard to assert the contrary.

2. The only defense available to relator against the note of May 15th is the Statute of Limitations and the question for decision is whether or not the court submitted this defense on proper instructions. The instruction given for plaintiff on the issue was as follows:

"In determining the facts as to whether J. W. Shipman changed his residence and became a resident of the Indian Territory you are to find these facts from all the evidence in the case. If you believe from the evidence that J. W. Shipman changed his residence and absented himself from his usual place of abode so the ordinary process of law could not be served upon him, then you should find for the defendants on their counterclaim; but if you find from the evidence that J. W.

Shipman did not change his residence but held his residence in Missouri, then you should find against the defendants on their counterclaim."

The court refused a peremptory instruction to find for defendants and refused two other instructions requested by them. One of these related to the payment of thirty-eight dollars on May 4, 1896. In substance it told the jury, if they believed said sum was paid on the indebtedness represented by the note of May 15, 1893, then said note was not barred by the Statute of Limitations and they should find for defendants. The next refused instruction advised the jury if they believed relator had departed from and resided out of this State from about March 1, 1901, to July, 1905, then the Statute of Limitations did not run against the note of May 15th. Further, that if the jury believed Shipman, about February or March, 1901, moved with his family to the Indian Territory and did not return to Missouri to live until about the said month of July, 1905, and that during said period of time relator Shipman could not have been served with the ordinary process of law in this State, by leaving a copy of such process with a member of his family over the age of fifteen years, at his usual place of abode in this State, then relator Shipman had, within the meaning of the law, departed from and resided out of this State during said time, and it was the duty of the jury to find for the defendants on their counterclaim.

(a) It will be perceived the instruction given for relator on the defense the note was barred, ignored the payment of May 4, 1896. The original counterclaim was filed March 16, 1906, and hence if said payment was made on the note of May 15th, the counterclaim on said note was not barred when filed and would not have been barred for nearly two months later. But counsel for relator say all the evidence shows the three partial payments were made on the note of November

15th; that they were credited on said note; that L. L. Allen swore they were made on it and that he gave a receipt which said the payment of May 4th was on the George Messick or second note. It is true, too, that William S. White, the principal, and W. G. Craig, secretary, of the Spring River Mining Company, directed and expected the money would be applied on the Messick note. We presume it was for these reasons the court below treated the payment of May 4th as having no bearing on the question of whether or not the counterclaim on the note of May 15th was barred. On the other hand defendants insist they were entitled to a peremptory instruction, arguing said payment must have been on the note of May 15th, because, if the note of November 15th never was delivered, as relator had alleged, the first one was necessarily the token of indebtedness. The notion involved in this argument is that relator is not only estopped to deny payment of the first note by the second one, but is also estopped to say the partial payments were made on the second note instead of the first. Relator is estopped only because of his pleading, and no farther than his defense to the second note contradicts what his replication says about the payment of the first one. The contention of defendants would extend the estoppel, by construction, beyond anything alleged in the replication; for nothing is said therein about the partial payments. The conclusion that the payment must have been made on the first note, if the second was not delivered, is specious rather than sound. The fact is that William S. White, the principal in both notes, and the Spring River Mining Company, which, owing to some transaction not disclosed, participated in making payments on the debt, regarded the second note as in force, at least as far as they were concerned. Hence the payments were directed by them to be applied on the second note and were thus applied by the payees, who likewise consider-

ed it in force. No doubt the sums paid went toward extinguishment of the debt by whatsoever note it was represented; but because relator is estopped to deny it is represented by the first note, it does not follow he is estopped to deny the payments were made on the first one. A partial payment suspends the Statute of Limitations because the payment is looked on as an acknowledgment of the debt from which a promise to pay the remainder may be inferred. [United States v. Wilder, 13 Wall. 254; Wood, Limitations (3 Ed.), sec. 97 and cases cited.] It would be contrary to all the facts before us to hold William S. White or the Spring River Mining Company intended, in making these payments, to acknowledge liability on the first note, which they considered paid. In this State a partial payment by a principal will toll the statute as to a surety. [Lawrence County v. Dunkle, 35 Mo. 395; Regan v. Williams, 185 Mo. 620, 628, 84 S. W. 959.] But if the principal pays on a renewal note which he treats as valid and his surety deems invalid, the payment ought not, as against the surety, to suspend the statute as to the original note which the principal regards as paid, for the reason that the payment is not an acknowledgment by the principal of liability on the original note and would not suspend the statute as to him. The payments in question undoubtedly were made on the Messick note, and as they would not have stopped the running of the statute on the first note as against White, the principal, and the other sureties besides relator, they did not stop it as to relator himself. To hold otherwise would be to leave him alone liable on the first note and the principal and co-sureties thereon discharged. The circumstances under which partial payments are made on a debt have to do with whether or not they check the statute. [Wood, sec. 97; Shannon v. Austin, 67 Mo. 485; Compton v. Johnston, 19 Mo. App. 88.] We rule, therefore, that inasmuch as the

entire evidence goes to show the payments were on the second note, the court below was right in refusing to submit to the jury the question of whether they were paid on the first one—was right in refusing the peremptory instruction requested by defendants on the theory the payment of May 4th took the counterclaim on the first note out of the statute of limitations, and in submitting the counterclaim as barred unless the statute was suspended by relator's residence outside the State.

(b) It remains to consider the instructions dealing with the departure of relator from the State and his residence in the Indian Territory. The one given for relator is faulty because it omits to advise the jury how ordinary process of law may be served on a defendant under the statute—to-wit: by leaving a copy of the petition and writ at his usual place of abode with a person of his family over fifteen years of age. [R. S. 1899, sec. 570.] It might have been thought by the jury that, as Shipman was in Missouri at various times attending court, these opportunities for service of process sufficed to continue the course of the statute. The instruction was based on the second clause of section 4282 of the statutes, which says if a person who is a resident of this State when a cause of action accrues against him, shall thereafter depart from and reside out of the State, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of the action. This statute has been considered in cases analogous to the one at bar. It is construed in connection with section 570, which provides for service of process by leaving a copy of the petition and writ with a person of the defendant's family over fifteen years of age, at his usual place of abode. The effect of the decisions is as follows: if, while he is a resident of the State, a cause of action accrues against

any one, and he afterwards departs from the State and resides elsewhere, leaving no member of his family on whom process can be served at his usual place of abode in the State, the course of the statute is checked. [Cook's Admr. v. Holmes, 29 Mo. 61.] If such resident goes outside the State with the intention of returning, and his family remains at his usual place of abode in the State, the statute continues to run. [Garth v. Robards, 20 Mo. 523; Venuci v. Cademartori, 59 Mo. 352.] If he breaks up his residence and resides elsewhere, the mere fact that he makes occasional trips into the State will not prevent the tolling of the statute. [Johnson v. Smith, 43 Mo. 499.] If after departing from this State, the debtor has no usual place of abode therein occupied by his family so that service of process can be obtained in the ordinary manner, the statute ceases to run. [Miller v. Tyler, 61 Mo. 401; Rhodes v. Farrish, 16 Mo. App. 430; Tiller v. Abernathy, 37 Mo. 196.] Counsel for relator say defendants' position is absurd, since they are insisting they could not serve process on relator when he was present during the various terms of court defending cases they had instituted. This point was really involved in the decision of the prior appeal but was not much discussed (124 Mo. App. loc. cit. 475). We are of the opinion that under the decisions, the circumstance of relator being present at court, did not continue the operation of the statute, if, in fact, relator had departed from this State, resided elsewhere and had no place of abode herein. The point is controlled by Johnson v. Smith, supra, wherein an instruction was asked that, if the plaintiff in said case could have procured service on the defendant at any time after the date of the last item in suit, and within five years of said date, and did not bring suit, plaintiff was barred. Said instruction was condemned on the ground it continued the operation of the statute if the defendant was at any time in the State and could have

been sued; whereas the exception allowed is a departure from the State and residing elsewhere. The court said that as a temporary absence did not stop the running of the statute, temporary returns would not stop the running of the exception. In Miller v. Tyler, it appeared the defendant had left his home in Missouri and gone to Arkansas where he remained three years. A week or two after he left, his family moved from the farm where they resided in this State, and went to another county therein, remaining until the defendant returned to Missouri. The Supreme Court said process could not have been served on the defendant so as to warrant a general judgment, unless he could have been served by leaving a copy of the petition and writ at his usual place of abode with some member of his family over fifteen years old; and under the rule in Tiller v. Abernathy, the removal of the defendant's family from their usual residence after he had gone to Arkansas, left the defendant without a usual place of abode in this State, and therefore the time he was absent from the State must be excluded in determining whether the statutory period had elapsed. The same line of reasoning was taken in Rhodes v. Farrish, wherein the defendant was a commercial traveler who was without a family. This court said it was absence beyond the reach of process for a substantial period, and for some purpose not transient in character, that was important on the question of the suspension of the statute, and as the defendant had kept no general residence or usual place of abode in this State, or family with whom the petition and writ could have been left, the fact that he was frequently in St. Louis, stopping at hotels, would not continue the course of the statute. Those decisions elucidate the point of law in hand, and in reliance on them defendants' counsel contend they were entitled to an instruction that the statute did not run in favor of relator after he went to

Tulsa and until his return to Missouri in 1905, a period of more than four years. No doubt the evidence tends very cogently, if not conclusively, to prove relator had departed from this State and resided in Tulsa during said period, leaving no family or place of abode here. On the previous appeal the question was treated as one of fact for the jury and so adjudicated; and we will take the ruling then made as the law of the case. Hence we overrule the exception based on the refusal of the trial court to instruct in defendants' favor. The other refused instruction which hypothe sized the facts regarding relator's departure from the State and residence in Tulsa is, in the main, an accurate exposition of the law as applicable to the facts touching the issue; but should be given, without speaking, as it did before, of the partial payments as credits on the note of May 15th. However, defendants cannot recover the amount of those payments from relator, because they went in reduction of the indebtedness which, of course, ought not to be twice paid.

3. As the case must be retried, it is well to say the first instruction given for relator should be so drawn as to allow recovery for such of the expenses incurred by him in defending the attachment as were reasonably necessary. The proper form of instruction is shown in Kelley v. Beauchamp, 59 Mo. 178.

The judgment is reversed and the cause remanded. All concur.