E. RHODES, Appellant, *v.* E. T. FARISH, Administrator, Respondent.

### February 10, 1885.

1. STATUTE OF LIMITATIONS — ABSENCE FROM THE STATE. — An "absence from the State " such as will, for a considerable period, render it impossible to obtain such a service of process as will support a general judgment, is such an absence as will interrupt the running of the statute of limitations.

2. —— APPELLATE PRACTICE. — The evidence in support of the defence of the statute of limitations being definite, undisputed, and not open to suspicion, an appellate court will direct the proper judgment to be entered by the trial court.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Reversed with directions.*

McENTIRE & LOEVY, for the appellant: The debtor need not abandon his domicile, but it is sufficient if he is beyond the reach of service of ordinary process, the statute is thereby interrupted. — *Johnson* v. *Smith*, 43 Mo. 499; *Venuci* v. *Cademartori*, 59 Mo. 352; *Garth* v. *Robards*, 20 Mo. 524; *Miller* v. *Tyler*, 61 Mo. 402.

E. T. FARISH, *pro se.*

THOMPSON, J., delivered the opinion of the court.

On the 9th of December, 1882, the plaintiff exhibited for allowance against the estate of Wharton T. LaBaume, deceased, the following due bill:—

" Due Emerson Rhodes, three hundred and seventy-five gold, which I promise to pay on the first day of November, eighteen hundred and seventy-one.

" W. T. LaBAUME.

" June 13, 1871."

The evidence shows, without contradiction, that the signature to this due bill was that of the deceased. It is admitted that when it became due the premium on gold was eleven and seven-eighths per cent.

The only defence was the statute of limitations. It will be perceived that the time which intervened between the 1st of November, 1871, when the due bill became due, until the 9th of December, 1882, when it was exhibited for allowance to the administrator of LaBaume, deducting one month and thirteen days which elapsed between the death of LaBaume and the grant of the letters of administration, was ten years, eleven months, and twenty-six days. To take the case out of the statute of limitations, the plaintiff,

by depositions and the oral testimony of witnesses, endeavored to show such a state of facts as would bring the case within three exceptions of the statute of limitations, as follows: 1. The exception contained in the first clause of section 3236, Revised Statutes, relating to cases where the defendant, being a resident of this state, is absent therefrom at the time when the cause of action accrues. 2. That contained in the second clause of the same section, which provides that "if after such cause of action shall have accrued, such person depart from and reside out of the state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." 3. That contained in section 3244, relating to cases where the defendant absconds, conceals himself, or does other improper acts, which prevent the commencement of the action. We think we may lay out of view the first and last of these grounds of exception, because we are clear that, upon the second ground, the case, upon the undisputed evidence, is not within the statute of limitations.

In determining whether a case is within the exception created by this clause, it is necessary to bear in mind the purpose of the statute, which was that the plaintiff should not lose his right of action by the bar of the statute of limitations, if, during any substantial period of the time during which the statute otherwise would have been running, the defendant had departed from, or resided out of, the state, so that ordinary legal process, such as would afford a foundation for a personal judgment against the defendant, could not be served upon him. *Venuci* v. *Cademartori*, 59 Mo. 352; *Garth* v. *Robards*, 20 Mo. 524. In order to determine whether a given case falls within this exception of the statute, it is therefore necessary to read the statute in connection with section 3489, which relates to the manner of serving ordinary process on defendants in civil actions; and, in inquiries of this kind, the supreme court has so read it. The third clause of section 3489 enacts

that " a summons shall be executed, except as otherwise provided by law  *  *  *  by leaving a copy of the petition and writ at his usual place of abode, with some person of his family over the age of fifteen years." When, therefore, the defendant had become temporarily a non-resident of Missouri, had even engaged temporarily in business in another state for several months, but left behind him in this state a dwelling-house, in which his family, consisting of a wife and several children lived during his absence, and had other real property in this state, the supreme court had no difficulty in holding that the case was not within the exception of the statute, because the plaintiff's writ, under the law, could have been served at his place of residence in this state, so as to warrant a general judgment against him. *Garth* v. *Robards*, 20 Mo. 524. So, where the defendant, having a family in this state and owning real property here, conveyed such property to a trustee for his wife, and then went to Italy, leaving his wife and family at his former residence here, and remained in Italy for eleven years, after which period he returned, it was held that the case was not within this exception of the statute, but that the statute continued to run in his favor ; because a service of a summons, such as would have have supported a general judgment against him, could have been made at his residence here. *Venuci* v. *Cademartori*, 59 Mo. 352. On the other hand, where the defendant left his home in Greene County, in this state, in 1862, and was absent from the state until 1865, and his family, immediately after he had left the state, removed from the farm on which they had resided at the time when he left them, and went to the house of a relative in Lawrence County, and remained there until 1864, and then removed to Saline County and remained there until 1865, and then returned with the defendant to Greene County, — it was held that the statute ceased to run during the defendant's absence from the state ; because, although his absence was temporary, yet, under

the rule in *Tiller* v. *Abernathy* (37 Mo. 196), after the removal of his family from their residence in Greene County, he had not until his return any "usual place of abode" within this state, where ordinary legal process could be served upon him. *Miller* v. *Tyler*, 61 Mo. 401. These decisions show clearly the meaning of the statute, and give point to what the supreme court said in another case, that "the residence" spoken of in the statute, is not synonymous with the word "domicile." "A man may have his 'domicile' in St. Louis and have a right to vote at elections, etc., and at the same time reside in Europe; and this European residence may be prolonged for years without affecting his St. Louis domicile. So a debtor may depart from and reside out of the state, within the meaning of the statute, without abandoning his domicile in Missouri. But the debtor's intentions, which enter so largely into the question as to domicile, are of no benefit to the creditor, so long as the debtor keeps out of the reach of process, and thus avoids a personal judgment against himself. Nor is it conceded that the question of intention is very material. It is the fact of absence beyond the reach of process for a substantial period of time, and for a purpose not transient in its character, that is important. *Johnson* v. *Smith*, 43 Mo. 499, 501. If we apply this test to the facts of the present case, it will appear that the defendant had a general residence in Ralls County, Missouri, at the time the note fell due in the fall of 1871, though he may have been, in point of fact, residing in Kansas temporarily at the time; that in the spring of 1872 he left Ralls County, Missouri, with the express intention of going to live in St. Louis. The testimony next enables us to get track of him in St. Louis about the year 1876, from which time until his death, in 1881, he pursued the business of a commercial traveler, with the exception of one or two intervals, when he appears to have been out of employment. This business took him out of this state for long periods of

time; and when he would return to St. Louis, at intervals between his trips and at other times when out of employment in St. Louis, he appears to have stopped at various hotels and boarding places or at bachelor's quarters in a rented room, and to have had no fixed place of residence anywhere. He was a bachelor and had no family; and though he had relatives in St. Louis, he did not live with them, and was not on good terms with them. All the testimony goes to show that, during the time when St. Louis might be called his general residence, he had "no usual place of abode" in this city where a summons could have been served in his absence under section 3489, Revised Statutes, and no family with a member of whom a copy of the petition and writ could have been left, as the statute provides. Then, there is undisputed testimony in the case which locates him outside of this state for periods of time which are more than sufficient to take the case out of the statute of limitations. His brother testifies of his own knowledge that, during three winters, he thinks, those of 1872, 1873, and 1874, the deceased lived in Bonham, Texas. Mr. Hinde testifies, that in August, 1876, he secured the deceased a place as traveling man with Monks & Sons, of St, Louis, and that he made one trip for them in Texas which lasted from four to six months; that in the spring of 1878 he was employed by a St. Louis grocery house, and made a long trip for them through Texas, the Indian Territory and Arkansas, which lasted four or five months; then, after a period of idleness, he went to work for John Endres & Co., of St. Louis, for a short time in the spring of 1880, traveling for them in Arkansas and Texas. Testimony introduced for the defendant shows that he was still in the employ of John Endres & Co. on June 30, 1881, when he died in Colorado. Other testimony is to the general effect that he had no particular place in St. Louis where he could with certainty be found, and one witness testified that, having a legal demand against him in 1876, he endeavored for two or three years

without success to find him in St. Louis; that when he did find him, the deceased told witness that he had just arrived from a trip, and promised to come and see witness, but did not keep his promise, and when witness went to find him a day or two afterwards, he had again left the city.

There is in the record nothing which tends to contradict this testimony. The fact shown by the defendant, that at the time of his death the deceased had on deposit in three different banks and in one commercial house in St. Louis, money in the aggregate amount of about $12,000, has no tendency to show where the actual residence of the deceased was during the period of time under inquiry, and does not tend to contradict the testimony of the plaintiff, which shows that the deceased was absent for frequent and long intervals during his residence in Missouri, during the ten years subsequent to the maturity of the note. The testimony places him in the category of men who have become so numerous of late years, that we, living in a large commercial community, are more or less familiar with their habits. The commercial traveler is necessarily abroad in the ordinary pursuit of his business during the greater part of his time. If he have a permanent residence here and a family who remain at such residence during his absence, his intervals of absence during his "trips," however frequent or long, would not bring his case within the exception of this statute of limitations; because "his usual place of abode" would be in St. Louis, and process could be served here at such place of abode upon a member of his family over fifteen years of age. But it is not so if he is a bachelor having no usual place of abode here, but carrying his residence with him, whether away on his trips or back at St. Louis, and making his home at any hotel, boarding house, or rented room, where he may choose to put up. This was the case with the deceased, and the evidence leaves no room to question that there were long intervals sufficient to take this case out of the statute of limitations,

and much more, during which legal process could not be served upon him within this state except at such periods as he could be caught here during the intervals between his trips or between his different employments. It has been well said, speaking of this statute, that " as a mere temporary absence does not stop the running of the statute (*Garth* v. *Robards*, 20 Mo. 523), so a mere temporary return or flying visits, after the residence is changed, will not stop the running of the exception." *Johnson* v. *Smith*, 43 Mo. 499, 501; *Cook* v. *Holmes*, 29 Mo. 61. It is not enough that the plaintiff might have been able to catch the defendant at his domicile in Ralls County, or in St. Louis, by the aid of a detective. It is sufficient that there were frequent and long intervals of absence during which the ordinary process of law could not have been served upon him, and that these intervals, added together and deducted from the time which elapsed between the maturity of the note and the exhibiting of it for allowance to the administrator, leaves a period of less than ten years.

A number of declarations of law were given by the court for both parties. We think that it is not necessary to notice any of them. If they are read in connection with the finding and judgment of the court, which were given for the defendant, they clearly indicate that the theory of the court was, that the defendant had his residence in Missouri during the interval which elapsed between the maturity of the note and its presentation for allowance, and that in the prosecution of his business, though he was " occasionally and temporarily absent," yet his absences were not " for a special period of time," or " for purposes not transient in their character." Our view of the evidence is, that it affords no basis for such a finding. We do not presume to perform the office of a jury, or of a judge sitting as a jury, and to weigh evidence or decide upon the credibility of witnesses ; but the evidence of the facts above stated being clear, undisputed, and untainted with any circumstance of sus-

picion, it is competent for us to declare the law applicable to the facts thus established, and not to send the cause back and put the plaintiff to further delay and expense in getting his just demand.

We accordingly reverse the judgment of the circuit court and enter judgment for the plaintiff here for the amount of the note with eleven and seven-eighths per cent added thereto, the same being the admitted premium on gold at the time when it fell due, together with interest upon this aggregate amount from the first day of November, 1871, until the date of this judgment, the same to be certified to the probate court.    It is so ordered.    All the judges concur.

*Supplementary Order.*    March 3, 1885.    The judgment of the circuit court will be reversed, and the cause remanded to that court with directions to enter judgment in favor of the plaintiff for the amount of the note, with eleven and seven-eighths per cent added thereto, together with interest on this aggregate amount from November 1, 1871, until the date of such judgment.    Such judgment to be certified to the probate court.    It is so ordered.    All the judges concurring.