FIDELITY AND DEPOSIT COMPANY OF MARYLAND, A CORPORATION, APPELLANT, v. FRANK J. BOUNDY, RESPONDENT.—158 S. W. (2d) 243.

St. Louis Court of Appeals.   Opinion filed February 3, 1942.

*Leahy, Walther & Hecker* and *Herbert E. Barnard* for appellant.

HUGHES, P. J.—Plaintiff's petition filed August 2, 1939, seeks recovery of the amount paid by it on December 13, 1933, to the Special Deputy Commissioner of Finance of the State of Missouri in charge of property and affairs of West St. Louis Trust Company, in liquidation, which payment was made by reason of defalcations by defendant, who was an employee of the Trust Company. The plaintiff seeks to escape the effect of the Statute of Limitations (Section 1014, R. S. 1939) by an allegation in the petition that subsequent to the 13th day of December, 1933, and prior to the date of filing suit, the defendant, Boundy, was absent from the State of Missouri for a period of about eighteen months and not subject to its judicial process.

The case was tried before the court, a jury being waived, and resulted in a finding and judgment for defendant, following which plaintiff unavailingly sought a new trial and it being denied the appeal was taken to this court.

There was no dispute as to the facts which are pertinent to the points presented on appeal. The evidence was that defendant Boundy had been an employee of the Trust Company from July 18, 1919, to on or about the 13th day of January, 1933, when the trust company was closed and placed in charge of the Finance Commissioner for liquidation; thereafter defendant was convicted in the United States District Court, and was, on February 3, 1935, committed to the Intermediate Reformatory at Chillicothe, Ohio, where he was restrained until October 13, 1936, when he was released from custody and immediately returned to St. Louis, and went to the home where his wife then lived, 5431 Queens Avenue, St. Louis, Missouri, where he has since resided; that at the time of his conviction and commitment he and his wife resided at 5100 Vernon Avenue, St. Louis, Missouri.

The defendant further testified as follows:

"That bank closed on or about the 13th day of January, 1933. My next employment was with the Cupples-Hesse Envelope Company, where I commenced working in January, 1934. In the year, 1935, I left the State of Missouri for Chillicothe, Ohio, where I was in the United States Reformatory. I left the Reformatory in October, 1936, either on the 13th or the 16th, I do not recall exactly which. While in Chillicothe, Ohio, I had correspondence with my wife at all times. I never had any intention of abandoning the State of Missouri as my residence and when released from the Reformatory I came directly back to St. Louis to my home, and within a reasonable time I went out to see my former employers at Cupples-Hesse and they gave me two weeks rest, after which time I went back to work for Cupples-Hesse Envelope Company, and am still in their employ.''

Appellant's abstract states that defendant filed answer on September 13, 1939, which was a general denial, and afterwards on March 18, 1940, filed an amended answer which did not contain a denial of the allegations of the petition but was solely to the effect that any cause of action that plaintiff may have had is now barred by the Statute of Limitations, as said cause of action accrued more than five years prior to the filing of said suit.

Appellant urges error on the part of the trial court in considering the plea of limitations raised for the first time in an amended answer after a general denial has remained on file for several months. If such point was otherwise of merit, it is not properly before us. It does not appear from the abstract of the bill of exceptions that appellant made such point in the trial of the case, or that the first answer was preserved in the bill of exceptions. There is but one way in which to get an abandoned pleading into the record and that is by introducing it into the evidence and making it a part of the bill of exceptions. [Moore v. Leach (Mo. App.), 14 S. W. (2d) 21; Briscoe v. Street R. Co., 222 Mo. 104, 120 S. W. 1162; Lindsey v. American Car & Foundry Co. (Mo. App), 16 S. W. (2) 613; Landers Lumber Co. v. Short (Mo. App.), 81 S. W. (2d) 375.] Furthermore, plaintiff not only failed to offer the abandoned answer in evidence, but tried the case on the theory that the Statute of Limitations was the main issue in the case, and plaintiff having proceeded on that theory in the trial court cannot change its theory on appeal. The point is ruled against appellant.

Appellant's cause of action accrued on December 13, 1933, and the Statute of Limitations began to operate from that date. This suit was filed on August 2, 1939, five years seven months and nineteen days after the cause of action accrued, and was therefore barred by the Statute of Limitations unless the counting of time under that statute was arrested while the defendant was restrained of his liberty in the prison in Ohio. Appellant contends that the time defendant was in the Ohio prison should not be counted in computing the time under

the Statute of Limitations, and relies upon Section 1023, Revised Statutes 1939, which is as follows:.

"If at any time when any cause of action herein specified accrues against any person who is a resident of this State, and he is absent therefrom, such action may be commenced within the times herein respectively limited, after the return of such person into the State; and if, after such cause of action shall have accrued, such person depart from and reside out of this State, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action."

The cause of action in this case having accrued long before defendant was taken to Ohio, it is only the latter part of the above Section that is claimed to be applicable. If that part of the section is to be applicable here, we must determine that the defendant not only departed from but that he resided in Ohio for the duration of his imprisonment. That he was out of the State of Missouri and was in Ohio for about eighteen (twenty) months is. conceded. He certainly did not depart from Missouri voluntarily; he never intended to depart; it was against his will. Having a place of abode in St. Louis, Missouri, as he did, the defendant never voluntarily abandoned it, and this is the first instance we are able to find where it has even been claimed, in effect at least, that a man could establish his residence behind the bars of a prison. Such a thing is not compatible with the sense conveyed to the ordinary mind of a man's residence.

This section of our law has been before the courts many times in cases where the debtor has voluntarily left the State. The authorities are reviewed in the case of State ex rel. v. Allen, 132 Mo. App. 98, 113-114, 111 S. W. 622, an opinion of this Court written by Judge GOODE, in which it is said:

"The effect of the decisions is as follows: if, while he is a resident of the State, a cause of action accrues against any one, and he afterwards departs from the State and resides elsewhere, leaving no member of his family on whom process can be served at his usual place of abode in the State, the course of the statute is checked. [Cook's Admr. v. Holmes, 29 Mo. 61.] If such resident goes outside the State with the intention of returning, and his family remains at his usual place of abode in the State, the statute continues to run. [Garth v. Robards, 20 Mo. 523; Venuci v. Cademartori, 59 Mo. 352.] If he breaks up his residence and resides elsewhere, the mere fact that he makes occasional trips into the State will not prevent the tolling of the statute. [Johnson v. Smith, 43 Mo. 499.] If after departing from this State, the debtor has no usual place of abode therein occupied by his family so that service of process can be obtained in the ordinary manner, the statute ceases to run. [Miller v. Tyler, 61 Mo. 401; Rhodes v. Farrish, 16 Mo. App. 430; Tiller v. Abernathy, :37.Mo. 196.]"

Those cases are not in point in this case. The case of Cook's Admr. v. Holmes, *supra,* is not in point because this defendant, although forced to leave the State temporarily did leave a member of his family, to-wit, his wife, on whom process could have been served at his usual place of abode in the State. The cases of Garth v. Robards, *supra,* and Venuci v. Cademartori, *supra,* and more nearly in point in that they hold that if a resident goes outside the State with the intention of returning, and his family remains at his usual place of abode in the State, the statute continues to run. The case of Johnson v. Smith, *supra,* is not in point because this defendant did not break up his residence and reside elsewhere. And the cases of Miller v. Tyler, *supra,* Rhodes v. Farrish, *supra,* and Tiller v. Abernathy, *supra,* are not in point because this defendant did leave a place of abode in this State occupied by a member of his family so that service of process could be obtained in the ordinary manner.

It is argued by appellant that even though the defendant did leave his wife at his usual place of abode where service of process might have been had, but the wife moved to another abode while defendant was away. The evidence does show that defendant's place of abode was 5100 Vernon Avenue, and that when he returned to St. Louis his wife lived at 5431 Queens Avenue. However, the record is silent as to when defendant's wife changed her abode, and for aught that appears she may have remained at defendant's usual place of abode on Vernon Avenue for the greater part of the time he was away.

Appellant in printed argument says, that if defendant was civily dead, as declared by Section 9225, Revised Statutes 1939, then during the term of his sentence all of his civil rights were suspended. The answer to this is that defendant was not civily dead nor were his civil rights suspended by virtue of that section of our statute. Section 9225, Revised Statutes 1939, provides that a sentence of imprisonment in the penitentiary for a term less than life suspends all civil rights of the person so sentenced during the term thereof, but this section has been construed and we think properly so to apply only to sentences by the State courts. [Jones v. Jones, 188 Mo. App. 221, 225, 175 S. W. 229; Presburg v. Hull, 34 Mo. 29.]

Although the Missouri statute suspending the civil rights of a convict has no application to a conviction in the Federal Court, it may well be argued that the common law applies. But that would not aid appellant's position, because by the ancient common law when sentence was pronounced for felony the offender was, by operation of law, placed in a state of attainder, one of the incidents of which was denominated civil death, but under the incident of civil death although he could not sue he might be sued. [13 C. J., sec. 2, p. 912, Convicts; McLaughlin v. McLaughlin, 228 Mo. 635, 129 S. W. 21.]

The question of whether a convict's residence or place of abode is altered by reason of the conviction, and the question of service of

process on a member of the convict's family, were directly before the Supreme Court of Connecticut in the case of Grant v. Dalliber, 11 Conn. 234, and the Court said:

"In the present case, it is conceded, that Dalliber, the defendant in the original action, was an inhabitant and resident in this State, when the process was served, and had been, for a long time before; and, of course, that he had a place of abode in the State. Where was his usual place of abode, as distinguished from the place of his occasional or temporary sojourning, is the question? Was it in Torrington, at the dwelling-house where he with his family formerly resided, and where his family, with his knowledge and consent, had ever since continued to reside? Or was it in the town of Wethersfield, in the State's prison, where he was constrained temporarily to remain? Before his imprisonment, his usual place of abode was in Torrington, in the same dwelling-house where the copy of the writ was left in service, where his family dwelt, and to which, as to his home, he returned, upon his enlargement from prison. He had never abandoned this, as his place of residence; he had left it, by constraint; he had acquired no new or other place of residence. The State's prison was not the place of his abode; it was the place of his punishment; and while there, he was absent from home."

In the case of Smith v. Hooten, 3 Pa. Dist. 250, service was had by leaving a copy of the writ at the residence of the convict with a member of his family while the defendant was confined in prison, and this was held good service.

Our statute (Section 880, R. S. 1939), providing for service by leaving a copy of the petition and writ at defendant's usual place of abode with some member of his family, makes no exception in favor of prisoners.

We think it was clearly shown by the evidence that the defendant not only did not reside out of this State, but that when he temporarily left the State he did not leave an abode in the State occupied by his wife upon whom process could have been served and the running of the statute was not arrested by his temporary forced absence.

Ordered that the judgment of the circuit court be and the same is affirmed. *McCullen, J.,* concurs; *Anderson, J.,* not sitting.