97 N.J. Super. 132 (1967)
234 A.2d 511
FIDELITY & DEPOSIT COMPANY OF MARYLAND, A CORPORATION OF THE STATE OF MARYLAND, PLAINTIFF,
v.
EMIL J. ABAGNALE, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided September 22, 1967.
*136 Mr. Harold M. Kain for plaintiff (Messrs. Stickel, Kain & Stickel, attorneys).
Mr. Gerald S. Meisel for defendant (Messrs. Krivit & Krivit, attorneys).
ANTELL, J.S.C. (temporarily assigned).
On these cross-motions for summary judgment the following undisputed material facts appear.
On June 17, 1960 the Totowa Savings and Loan Association was robbed of $7,323, for which defendant was indicted by a federal grand jury on February 14, 1961. On March 2, 1961 he pleaded guilty to the indictment and on March 23, 1961 was sentenced in the United States District Court for the District of New Jersey to a term of eight years imprisonment. During the period between April 5, 1961 and December 5, 1964 he was confined at the Federal Correctional Institution in Lewisberg, Pennsylvania.
On February 24, 1964 counsel for plaintiff, Totowa's subrogee, wrote defendant that plaintiff would look to him for redress. The full text of this letter, which defendant referred to his attorney, as well as the entire ensuing correspondence between counsel, follows:
*137 "February 24, 1964
Dear Sir:
We represent the Fidelity and Deposit Company of Maryland, which company insured the Totowa Savings and Loan Association against the loss sustained by the said Totowa Savings and Loan Association from the robbery, which occurred on June 17, 1960. We are advised that you and others were responsible for this loss. Our client has placed this matter in our hands for the purpose of recovering its loss, and it looks to you and the other responsible parties for reimbursement.
We are writing you in order to give you the opportunity to adjust this claim without suit if you so desire. We will expect to hear from you within 10 days of the date of letter; and if we do not hear from you, we will proceed accordingly.
 Very truly yours,
 [counsel for plaintiff]"
 "March 3rd, 1964
Dear Harold:
Your letter to Mr. Emil Abagnale has been referred to me for attention. Emil is still confined to the Federal Penitentiary and at this time, no date has been fixed for his release. I can only state that as far as I know, Emil Abagnale is without funds of any kind and so obtaining reimbursement from him will be somewhat of a problem. Don't you agree?
 Sincerely yours,
 [counsel for defendant]"
 "March 10th, 1964
Dear Maurice:
Our investigation has revealed that Mr. Abagnale had substantial equity in realty located at No. 242 Riverview Avenue, North Arlington, prior to his conviction. Furthermore, it is our understanding that this property was subsequently transferred without consideration to a relative. It is our intention to seek judgment and an Order setting aside this conveyance.
After you have had an opportunity to discuss this with your client or his representative, please advise us if you will continue to serve as counsel in the civil proceeding so that we may make proper service.
 Sincerely yours,
 [counsel for plaintiff]"
 "March 11, 1964
Dear Harold: 
In answer to yours of the 10th, please be advised that I will discuss that which you state in your letter and will advise you as soon as I receive some information.
 Sincerely yours,
 [counsel for defendant]"
*138
 "April 29, 1964
Dear Maurice:
The home office is making inquiry in the above captioned matter. Your letter of March 11, 1964, stated you would advise me on Abagnale's intentions as soon as you have discussed the matter with him.
Please let me know the latest developments so that I in turn may advise my client.
 Very truly yours,
 [counsel for plaintiff]"
 "May 5, 1964
Dear Harold: 
The above named is still confined to a Federal Penitentiary. Therefore, I feel that nothing can be accomplished until he is released. Thereafter, I will communicate with you.
 Sincerely yours,
 [counsel for defendant]"
With the exception of the period during which he was confined in Lewisberg, both defendant and his wife have continuously resided together in New Jersey since the time of their marriage approximately 11 years ago. The wife has resided without interruption at the same address in North Arlington, New Jersey.
Complaint was filed in this action on January 19, 1967 and served upon defendant February 12, 1967. Defendant responds to the complaint by interposing the six-year statute of limitations, N.J.S. 2A:14-1. Plaintiff replies by reliance upon the statute's tolling provision, N.J.S. 2A:14-22, which, in pertinent part, provides:
"If any person against whom there is any of the causes of action specified in section 2A:14-1 * * *, is not a resident of the state when such cause of action accrues, or removes from this state after the accrual thereof and before the expiration of the times limited in said section * * * the time or times during which such person is not residing within this state * * * shall not be computed as part of the periods of time within which such an action is required to be commenced by the section. The person entitled to any such action may commence the same after the accrual of the cause therefor, within the period of time limited therefor by said section, exclusive of such time or times of nonresidence * * *"
Plaintiff argues that the term of defendant's confinement at Lewisberg is saved from limitations under the foregoing *139 section as a period of nonresidence following his removal from the State. Defendant contends that the tolling statute contemplates a voluntary removal, that his departure from the State was involuntary, that he was at all times within the reach of New Jersey process, and that the period of his confinement must accordingly be computed as part of the time limited by N.J.S. 2A:14-1. If the period of detention is exempt from computation, the action is timely brought. If not, it is barred by limitations.
To grace its claim to the benefits of the tolling section plaintiff notes that defendant pleaded guilty to the crime charged and that its right to recover is plain. It also argues that the policy considerations underlying the statute of limitations are inappropriately invoked because defendant has not been disadvantaged by the passing of time; he does not allege that witnesses have disappeared, that evidence has been lost, that memories have faded, or that the pending action comes as a surprise. Furthermore, plaintiff contends, it would be inequitable to allow defendant to evade his obligation after allowing plaintiff to anticipate that the obligation would be honored. Fraud is not claimed, nor is there a suggestion that defendant during the period of limitations made a part-payment or even promised to pay. Compare Bassett v. Christensen, 127 N.J.L. 259, 261 (E. & A. 1941); Ditmars v. Camden Trust Co., 10 N.J. Super. 306, 348 (Ch. Div. 1950), affirmed 10 N.J. 471, 498 (1952).
The foregoing circumstances are insufficient to defeat the running of limitations. The statute of limitations embodies important policy considerations aimed at creating repose. It is a practical device to spare the courts from litigation of stale claims and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. It presupposes the existence of a well-founded claim, and its primary purpose is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity *140 to defend. The right to rely thereon is a vested right that is proof against legislative or judicial impairment. State by Parsons v. Standard Oil Co., 5 N.J. 281, 293-296 (1950); Union City Housing Authority v. Commonwealth Trust Co., 25 N.J. 330, 335 (1957); Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 108 (1965); Rosenau v. City of New Brunswick, 93 N.J. Super. 49, 54 (App. Div. 1966); 34 Am. Jur., "Limitation of Actions," §§ 10, 14. That defendant has suffered no actual prejudice resulting from the delay is immaterial. Nothing more need be shown beyond the mere lapse of time. 34 Am. Jur., "Limitation of Actions," § 5, p. 15. E.g., West Jersey Title &c., Co. v. Industrial Trust Co., 27 N.J. 144, 153 (1958). It is even settled that the statute will not be interrupted despite the plaintiff's ignorance of the facts giving rise to the claim. Joseph v. Lesnevich, 56 N.J. Super. 340, 355 (App. Div. 1959).
The residual question, therefore, is whether the departure of defendant, a New Jersey resident, from this State under constraint of federal authority for incarceration in a sister state suspends the running of limitations during his detention. The question has not been decided in New Jersey and little guidance is found elsewhere.
In support of its proposition that defendant's removal was voluntary plaintiff cites Robin v. Ely & Walker Dry Goods Co., 137 S.W.2d 164 (Tex. Civ. App. 1940). In that case, after conviction for bankruptcy violations, defendant, a Texas resident, was sentenced to a federal prison in Oklahoma. In holding that the running of limitations was suspended during defendant's absence from Texas the court reasoned that since the crime for which he was imprisoned was voluntarily committed the consequences flowing therefrom, including imprisonment in a foreign jurisdiction were, by implication, voluntarily assumed.
This decision is inapposite for the reason that the tolling statute there involved conditioned the suspension of limitations upon the defendant merely being
*141 "* * * without the limits of this State at the time of the accruing of such action, or at any time during which the same might have been maintained * * *"
In this respect it is materially different from our own statute, which becomes operative only where defendant "removes from" the State and for however long he remains nonresident. That the Texas statute required nothing more than the mere absence of a defendant from the state has been regarded by at least one commentator as explaining why defendant's extra-territorial imprisonment was not treated as a material factor in that case. 24 A.L.R.2d 626. In passing upon the voluntariness of defendant's departure the opinion is dictum only, going as it does beyond the necessities of the case. Furthermore, the rationale of a constructively volitional departure from the State under the auspices of correctional authorities, premised upon a voluntarily committed crime, is not realistically compatible with the particular language of our statute.
More nearly appropriate to the facts of this case is Fidelity & Deposit Co. of Maryland v. Boundy, 236 Mo. App. 656, 158 S.W.2d 243 (Ct. App. 1942). There the same question was raised on facts and under a statute nearly identical to these. The statute provided:
"* * * if, after such cause of action shall have accrued, such person depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action."
Following a federal conviction defendant was taken from his Missouri residence and incarcerated in Ohio for approximately 18 months. After his release he returned to the home in Missouri where his wife had resided during his detention. It was found that he always intended to return to Missouri and never intended to abandon that state as his residence. In holding that his departure was involuntary the court said:
*142 "If that part of the section is to be applicable here, we must determine that the defendant not only departed from but that he resided in Ohio for the duration of his imprisonment. That he was out of the State of Missouri and was in Ohio for about eighteen (twenty) months is conceded. He certainly did not depart from Missouri voluntarily; he never intended to depart; it was against his will. Having a place of abode in St. Louis, Missouri, as he did, the defendant never voluntarily abandoned it, and this is the first instance we are able to find where it has ever been claimed, in effect at least, that a man could establish his residence behind the bars of a prison. Such a thing is not compatible with the sense conveyed to the ordinary mind of a man's residence." (158 S.W., 2d, at p. 245)
In affirming the opinion below it was held that defendant's absence from the State by reason of imprisonment in a federal institution located in a foreign state did not stop the running of limitations.
Plaintiff argues that the opinion of the court in the Boundy case rests, not solely upon the fact that defendant left Missouri involuntarily, but equally upon the fact that under Missouri law he remained subject to substituted service of Missouri process. The argument continues that the opinion is therefore not acceptable precedent for a New Jersey court since, under Lemke v. Bailey, 41 N.J. 295 (1963), amenability to local process during nonresidence is irrelevant to the tolling statute. Thus does plaintiff join issue with defendant's contention that his asserted answerability to New Jersey process while a prisoner at Lewisberg is germane.
Lemke v. Bailey was an automobile negligence case in which our Supreme Court held that the statute of limitations was tolled during the continued nonresidence of defendant, a nonresident when the cause of action accrued, notwithstanding that under the Motor Vehicle Act he was at all times subject to service of process through the Director of the Division of Motor Vehicles. The decision is essentially a reaffirmation of Gotheiner v. Lenihan, 20 N.J. Misc. 119, 25 A. 2d 430 (Sup. Ct. 1942), which held that the language of the tolling statute was too plain and unambiguous to allow a judicially engrafted exception to its terms, so that if a *143 defendant was nonresident at the time a cause of action accrued, the running of limitations was suspended during his continued nonresidence regardless of the fact that he was subject to service of New Jersey process. Subsequent legislative history shows an unmistakable intent on the part of the lawmakers to ratify this construction. See Lemke, supra, at p. 299.
Defendant meets this argument by asserting, first, that he remained subject to New Jersey process during his absence from this State under (1) R.R. 4:4-4(a), authorizing substituted service at his dwelling house or usual place of abode upon a competent member of his family of the age of 14 years or over, and (2) R.R. 4:4-4(j), providing for service by registered mail. Secondly, he distinguishes the Lemke case on the ground that defendant there was a nonresident when the cause of action arose, whereas he was a resident  a distinction the majority of the court may have regarded as significant in considering the legislative classifications there dealt with. Lemke, supra, at pp. 302-3. But the classifications dealt with were only (1) nonresidents subject to process, and (2) residents subject to process, and it was held that limitations tolled for the first classification although not for the second. No opinion was expressed concerning cases involving persons resident when the cause of action accrued but physically absent later although amenable to process. Defendant's point is that he should not be subject to the tolling statute since he, as a removed resident, could have been served during the period of limitations and therefore plaintiff was in no way disadvantaged by his absence.
That defendant could constitutionally have been served by registered mail seems free from doubt. J.W. Sparks & Co. v. Gallos, 47 N.J. 295 (1966); Carlin v. Schuler, 89 N.J. Super. 366 (Law Div. 1965). But it is a basic rule of construction that the intent of the Legislature must be gathered in light of conditions and circumstances prevailing at the time of the enactment. A new meaning may not be given the words of an old statute in consequence of *144 changed conditions probably not foreseen by the Legislature. 50 Am. Jur., "Statutes," § 237, p. 224 (1944); Crawford, Statutory Construction, § 210 (1940); 2 Sutherland, Statutory Construction (3d ed. 1943) § 5101. The language of the tolling statute with which we are here concerned is essentially unchanged from its first enactment in 1820. Pennington, Laws of New Jersey, 1703-1820, p. 670 (1821). See Lemke v. Bailey, supra, at p. 298. The deemphasis upon territorial boundaries in defining the limits of state court jurisdiction is of recent origin and could not have been in the mind of the lawmakers. In providing the benefits of limitations only for New Jersey residents the framers of the law could have had in their contemplation none other than persons physically situated within the State. How they would have formulated their policy if the phenomenon of expanding state court territorial jurisdiction had been foreseen is a speculation we will not pursue. Possibly they would have agreed that the object of the tolling statute in preserving a plaintiff's cause of action for the limited period (see dissenting opinion of Schettino, J., in Lemke v. Bailey, supra, at p. 303) was adequately served where the departed resident remained within the reach of New Jersey process. On the other hand, the view might have prevailed that the facility of extra-territorial service did not meet the hardship of locating a departed resident in the sprawling country beyond New Jersey's borders. I conclude, therefore, that the holding of Lemke v. Bailey, that a nonresident's amenability to process through the Motor Vehicle Director is irrelevant under the tolling act, applies in the case of a resident who becomes absent from the State after the accrual of the cause of action even though subject to extraterritorial service. I perceive no meaningful distinction between the two classifications.
Turning to defendant's alternate claim that he could be reached by substituted service of New Jersey process under R.R. 4:4-4(a), it is clear that if such amenability is demonstrated this alone would foreclose the tolling of limitations. This follows since substituted service presupposes residence *145 at the place of service and the tolling statute does not suspend the running of limitations upon claims against residents. Here the claim of residence rests upon the involuntariness of defendant's departure, it being argued that one cannot acquire a new residence by compulsion and that in such case one's "usual place of abode" continues where his family resides. This proposition has found acceptance in a number of cases where the sufficiency of notice or service for a variety of purposes was analyzed in situations involving imprisonment, sometimes extraterritorial. Cohen v. United States, 297 F.2d 760, 774 (9 Cir. 1962); United States v. Stabler, 169 F.2d 995, 998 (3 Cir. 1948); Shaffer v. Tepper, 127 F. Supp. 892, 894 (E.D. Ky. 1955); Bohland v. Smith, 7 F.R.D. 364, 365 (E.D. Ill. 1947); Bull v. Kistner, 257 Iowa 968, 135 N.W.2d 545, 548 (Sup. Ct. 1965); Fidelity & Deposit Co. of Maryland v. Boundy, 236 Mo. App. 656, 158 S.W.2d 243, 245 (Ct. App. 1942); Millett v. Pearson, 143 Minn. 187, 173 N.W. 411, 412; 5 A.L.R. 256 (Sup. Ct. 1919). Contra, Grayer v. State, 234 Ark. 548, 353 S.W.2d 148, 150 (Sup. Ct. 1962).
These decisions are largely influenced, if not governed, by a hybrid of residence and domicile, and in some instances the terms are even used interchangeably. See, in this connection, Kurilla v. Roth, 132 N.J.L. 213, 215 (Sup. Ct. 1944). The law in this State has developed in somewhat rigid conformity to the principle that provisions for substituted service, being in derogation of the common law, must be strictly construed. Hence, the rule has been consistently applied that one's "dwelling house or usual place of abode" is limited in its meaning to the place where one is "actually living" at the time when service is made. Warfield v. Fischer, 94 N.J. Super. 142, 146 (Law Div. 1967); Maglo v. Weaver, 11 N.J. Super. 32 (App. Div. 1950); Kurilla v. Roth, supra, at p. 215; Doughnut Corp. of America v. Taskirides, 121 N.J.L. 136, 137 (E. & A. 1938); Mygatt v. Coe, 63 N.J.L. 510 (Sup. Ct. 1899). Although this rule has not been specifically applied in a context where a defendant was *146 held in penal confinement, the conceptual difficulties inherent in the notion of a nonresident resident arising from his constructive nonresidence in another place where he is actually living are too formidable to warrant subscribing to the rationale of the cases previously cited. Nor are there policy considerations sound enough to justify the effort. The expectation that a defendant will normally receive notice of process served through a competent member of his household living at the same place of abode as he, Warfield v. Fischer, 94 N.J. Super. 142, 147 (Law Div. 1967); Kurilla v. Roth, supra, at p. 216; 42 Am. Jur., "Process," § 60, p. 49 (1942); 72 C.J.S. "Process" § 48 (1951), does not, it seems to me, prevail in the setting of familial disorganization frequently ensuing where the head of the household is committed to prison.
I therefore conclude that defendant has not demonstrated his residence in New Jersey while confined at Lewisberg, and that the suspension of limitations cannot be avoided on this basis. The standards embodied in R.R. 4:4-4(a) are clearly pertinent, but they have not been met in this case.
Whether the decision of the court in Fidelity & Deposit Co. of Maryland v. Boundy, supra, is bottomed on a joint or several view of the involuntariness of defendant's departure and his subsequent amenability to process is unclear. But even if that case does posit amenability as a condition of its holding, the language of our tolling statute is such that it is inoperative on these facts, regardless of other considerations.
"Statutory language is to be given its ordinary meaning in the absence of specific intent to the contrary." Abbotts Dairies v. Armstrong, 14 N.J. 319, 325 (1954); R.S. 1:1-1. "`Where the legislative purpose is expressed in unmistakable language, it must be enforced by the courts as it is written.'" Belfer v. Borrella, 9 N.J. Super. 287, 293 (App. Div. 1950). In declaring that time shall be saved from limitations where a resident defendant "removes from this state" during the period of his subsequent nonresidence, the Legislature spoke in the active, not the passive, sense. Its *147 choice of language leaves no room for a construction which would activate its provisions where a defendant is "removed from" the State, i.e., where his removal is other than voluntary. If the Legislature had intended such a result, it would have been an easy thing so to provide. E.g., State v. Reed, 34 N.J. 554, 557 (1961), and see the Texas statute considered by the court in Robin v. Ely & Walker Dry Goods Co., supra. The chosen language of our statute must be read as requiring an affirmative undertaking on the part of a defendant to depart from the territorial limits of New Jersey, proceeding from his free and conscious decision to dissolve his residence here. Because this defendant's removal from the State was involuntary I conclude that the time during which he was confined at Lewisberg is not to be exempted from computation within the period of limitations prescribed in N.J.S. 2A:14-1, and that plaintiff's cause of action is therefore barred.
The two statutory policies which have here competed for priority on the facts presented are those (1) favoring repose from stale claims, Union City Housing Authority v. Commonwealth Trust Co., supra, and (2) allowing a plaintiff the full amount of time limited by law to bring his suit, Lemke v. Bailey, supra, at p. 303, dissent by Schettino, J.; 34 Am. Jur., "Limitation of Actions," § 218, p. 175.
As noted, defendant's amenability to extraterritorial service of New Jersey process during his detention has played no part in construing the tolling statute. But it cannot be overlooked that the availability of this type of service to parties circumstanced as was plaintiff here is a factor in any retrospective determination of whether the result of this construction leaves reasonably protected the values embraced by the respective statutes, whether one set of values has been vandalized to safeguard the other, and what the practical effect of the interpretation proffered by plaintiff would have been. This, with propriety, we may do. 34 Am. Jur. "Limitation of Actions," § 39, p. 42.
*148 The decision compelled by the plain language of the tolling statute strikes a reasonable balance of the interests involved. During incarceration a prospective defendant can do nothing but wait for the institution of suit. He is powerless to provoke action by the plaintiff, and it is easy to hypothesize a case in which after a 15- or 20-year confinement he is called upon to answer a civil claim antedating his imprisonment, originating from facts unrelated to the cause of his confinement, where evidence is gone which might have been made secure had suit been seasonably brought, and where the plaintiff, had he chosen to do so, could have brought the suit years earlier. A defendant's imprisonment for a term less than life is no impediment to suit. Hartford Accident & Indemnity Co. v. Richards, 179 Kan. 187, 294 P.2d 236, 240 (Sup. Ct. 1956). These are simply logical extensions of the facts before us, and it seems to me that one who is guilty of no willful departure from the jurisdiction can reasonably retain the benefits of limitations without offense to the theory of the tolling statute. On the other hand, to sustain plaintiff's position would wantonly sacrifice policies underlying the statute of limitations without advancing any legitimate objective of the tolling statute.
There being no genuine issue as to any material fact in dispute, and defendant's right to relief being clear as a matter of law, his motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied.