

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| KATHRYN LOVE and<br>DELORES HENRY | ) | No. ED103690 |
| | ) | |
| Plaintiffs/Appellants, | ) | |
| | ) | Appeal from the Circuit Court of |
| vs. | ) | the City of St. Louis |
| | ) | |
| PAUL PIATCHEK, et al. | ) | |
| | ) | Honorable David L. Dowd |
| Defendants/Respondents. | ) | |
| | ) | Filed:  November 08, 2016 |

## OPINION

Kathryn Love (Mother) and Delores Henry (Grandmother) appeal from the trial court's judgment dismissing as untimely their wrongful death lawsuit against the St. Louis Board of Police Commissioners and certain St. Louis police officers after Mother's son, Darrell Williams, Jr., was shot and killed by two officers. We affirm.

## Background

On November 18, 2009, Darrell Williams was riding in a car with friends when the police gave chase and ultimately stopped the vehicle using tire spikes, causing the vehicle to spin out of control and flip over. The officers then approached the vehicle and discharged their firearms, killing Darrell and one of his friends.

In January 2010, Grandmother, describing herself as "next of kin," filed a wrongful death suit alleging that the Respondent officers opened fire on the occupants of

the vehicle without cause and with excessive force. Grandmother's petition did not mention either of Darrell's parents, who were both incarcerated at the time. Respondents answered the petition, and the parties began discovery. Jury trial dates were set and continued successively from 2011 until 2014. In April 2014, one week before trial, Grandmother dismissed her suit without prejudice.

In August 2014, Mother filed her own wrongful death suit on the same facts. The case was removed to federal court in October and remanded to the state trial court in December. In March 2015, Respondents moved to dismiss Mother's suit for untimeliness, asserting that the statute of limitations expired in November 2012, three years after Darrell's death. Grandmother moved to intervene, and the trial court granted that motion. Respondents renewed their motion to dismiss, asserting that Grandmother's addition as a plaintiff failed to save Mother's petition from untimeliness under the saving statute (§537.100). The trial court granted Respondents' motion to dismiss, reasoning that Grandmother's original petition was invalid because she was not an eligible plaintiff in the first instance, so there was nothing for the saving statute to save. This appeal followed.

**Standard of Review**

We review the trial court's grant of a motion to dismiss *de novo*. Grace v. St. Louis County, 348 S.W.3d 120, 124 (Mo. App. E.D. 2011). When reviewing the dismissal of a petition for failure to state a claim, we treat the facts contained in the petition as true and construe them liberally in favor of the plaintiffs, granting the plaintiffs all reasonable inferences therefrom. Id.

2

**Wrongful Death Statute**

Section 537.080, creating a cause of action for wrongful death, entitles the following classes of plaintiffs to file the suit:

> (1) The spouse or children or the surviving lineal descendants of any deceased children, natural or adopted, legitimate or illegitimate, or by the father or mother of the deceased, natural or adoptive;
>
> (2) If there be no persons in class (1) entitled to bring the action, then the brother or sister of the deceased, or their descendants […];
>
> (3) If there be no persons in class (1) or (2) entitled to bring the action, then a plaintiff *ad litem* appointed by the court. […] Such plaintiff *ad litem* shall be some suitable person competent to prosecute such action and whose appointment is requested on behalf of those persons entitled to share in the proceeds of such action.

Section 537.100 imposes a three-year statute of limitations but, in the event of a non-suit, allows an additional year for the filing of a new action. This provision, the saving statute, states:

> [I]f any such action shall have been commenced within the time prescribed in this section, and the plaintiff therein take or suffer a nonsuit, or after a verdict for him the judgment be arrested, or after a judgment for him the same be reversed on appeal or error, such plaintiff may commence a new action from time to time within one year after such nonsuit suffered or such judgment arrested or reversed.

**Discussion**

The parties dispute whether Grandmother had standing under §537.080 to bring the original action, *i.e.*, whether her petition was valid in the first instance, which determines whether Mother's subsequent petition can relate back under the saving statute.

By naming herself "next of kin," Grandmother evidently attempted to invoke standing as a member of the third plaintiff class. Although Grandmother failed to request appointment as plaintiff *ad litem*, this particular defect is not necessarily fatal. In Thorson v. Connelly, 248 S.W.3d 592 (Mo. 2008), a grandmother brought a wrongful death suit as

3

plaintiff *ad litem* but failed to file a formal application for appointment in that capacity until after the statute of limitations had lapsed. The Supreme Court of Missouri held that Thorson's appointment could relate back to the original petition because, in the absence of superior plaintiffs, she was a proper third-class plaintiff.

Consistent with Thorson, it is well settled that the re-filing by one proper plaintiff after dismissal by another, or the substitution or joinder of one proper plaintiff with another, after expiration of the statute of limitations but before judgment, relates back to the original petition. See *e.g.*, Denton v. Soonattrukal, 149 S.W.3d 517 (Mo. App. S.D. 2004) (daughter's action timely under saving statute after dismissal of first action by other daughter), and State ex rel. Stephens v. Henson, 772 S.W.2d 706 (Mo. App. S.D. 1989) (children added as co-plaintiffs in widow's second suit filed under saving statute). Conversely, it is also well settled that, if the party filing the original petition is a "stranger to the suit" and lacks a legal or beneficial interest in the cause of action, then substitution of the proper plaintiff after expirtion of the statute of limitations will not relate back. Thorson, 248 S.W.3d at 595; Forehand v. Hall, 355 S.W.2d 940 (Mo. banc 1962).

The foregoing precedent dictates the result here. Given that Darrell's surviving parents were superior plaintiffs as members of the first class under §537.080, Grandmother was not an eligible third-class plaintiff, so her petition was never viable. Consequently, Mother's subsequent petition cannot relate back to Grandmother's petition

4

under the saving statute, and the trial court's judgment must be affirmed.


_Mary K. Hoff_
Mary K. Hoff, Judge


Lisa Van Amburg, Presiding Judge, concurs in a separate opinion.

Coleen Dolan, Judge concurs in opinion of Judge Mary K. Hoff and concurring opinion of Judge Lisa Van Amburg.



# In the Missouri Court of Appeals
# Eastern District

**DIVISION FIVE**

| | | |
|---|---|---|
| KATHRYN LOVE and<br>DELORES HENRY | ) | No. ED103690 |
| | ) | |
| Plaintiffs/Appellants, | ) | |
| | ) | Appeal from the Circuit Court of |
| vs. | ) | the City of St. Louis |
| | ) | |
| PAUL PIATCHEK, et al. | ) | |
| | ) | Honorable David L. Dowd* |
| Defendants/Respondents. | ) | |
| | ) | Filed: November 08, 2016 |

**CONCURRING OPINION**

I concur in the holding of the majority, as legal precedent requires, but write separately to shed light on the fact that Mother's claim would have been timely but for apparent systemic and collective failures in the original case.[1]

The legislative mandate of the wrongful death statute is clear: "Any settlement or recovery by suit *shall* be for the use and benefit of those who sue or join, or who are *entitled to sue or join, and of whom the court has actual written notice*." §537.095. Though Grandmother was not an eligible plaintiff under the statute, the deceased's father

---

\* Though Judge Dowd signed the final appealable order of dismissal in the present case, this concurring opinion concerns only the original case that preceded it.

[1] The original case cannot be revived for further prosecution at this juncture because the judgment became final after Grandmother dismissed her petition. A party may collaterally attack a final judgment only through Rule 74.06.

was, and he attempted to assert a claim as a first-class plaintiff in the original case well before the statute of limitations expired. In August 2010, Darrell Williams, Sr. (Father), acting *pro se* from a federal penitentiary,[2] revealed his status and inquired about the case. As chronicled in the attached appendix, the docket sheet contains multiple filings by Father stating his legal and beneficial interest in the case, several of which expressly assert his claim by seeking intervention as a party plaintiff.

Specifically, in November 2010, Father filed letters asking to be named a plaintiff and requesting copies of various documents in the court file. The trial court sent the documents but did not address Father's request to be named a plaintiff. Then in May 2011, Father filed a formal motion to be added as a party plaintiff, but the trial court never ruled on it. Father was entitled to intervene as a matter of right under Rule 52.12(a).[3] A first-class plaintiff has an absolute right to intervene in a wrongful death suit. Martin v. Busch, 360 S.W.3d 854, 856 (Mo. App. E.D. 2011). "When a statute confers an unconditional right of intervention, the proposed intervenor is entitled to intervene as a matter of right, the right to intervene is absolute, and *the motion must be approved*." Id. citing State ex rel. Nixon v. American Tobacco Co., Inc., 34 S.W.3d 122, 127 (Mo. 2000). (emphasis added)

Had the trial court granted Father's motion to intervene as was Father's right, Mother's subsequent petition would have been timely under the saving statute. §537.100;

---

[2] Father, now 50 years old, remains incarcerated on felony drug charges and is scheduled for release in 2026.

[3] Rule 52.12(a), titled Intervention of Right, states: "Upon timely application anyone *shall be permitted* to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." (emphasis added)

2

<u>Denton v. Soonattrukal</u>, 149 S.W.3d 517, 523 (Mo. App. S.D. 2004). Instead, the record in the original case leaves the impression that the justice system turned a deaf ear to Father's timely and persistent pleas because of his *pro se* status and incarceration.

The record reflects that Father properly filed a timely motion to intervene but failed to notify Respondents pursuant to Rule 52.12(c). Father also did not "call up" the motion for a hearing, but I am not persuaded that a hearing was necessary given that he was entitled to intervene as a matter of right. It is well-settled that *pro se* parties are not entitled to indulgences they would not have received if represented by counsel. <u>Manning v. Fedotin</u>, 64 S.W.3d 841, 846 (Mo. App. W.D. 2002). This principle "is necessitated by the requirement of judicial impartiality, judicial economy, and fairness to all parties." <u>Id</u>. Here, however, the failure to acknowledge Father's pleadings offends those very ideals. Addressing Father's motion would not have constituted an "indulgence" unavailable to represented parties. Quite the contrary, had Father been represented by counsel, the court could not have ignored his motion. Moreover, court clerks routinely assist new lawyers and *pro se* litigants appearing in person with procedural mechanics such as notifying parties and calling up motions. Here, however, Father's "civil death"[4] proved fatal to both parents' wrongful death claim. Father's *pro se* status and incarceration should not have dictated the outcome of his motion and ultimately the dismissal of Mother's case.

---

[4] Under ancient common law, a convicted felon was, by operation of law, placed in a state of attainder, incident to which the felon lost all legal rights including the right to sue. <u>Fidelity & Deposit Co. of Maryland v. Boundy</u>, 158 S.W.2d 243 (Mo. App. 1942). Missouri's "civil death statute" codified this aspect of the common law by specifically barring civil suits by prisoners. §222.010 RSMo 1969. The statute was repealed in 1979. For a tutorial on the English origins and American evolution of civil death, see Gabriel J. Chin, *The New Civil Death: Rethinking Punishment in the Era of Mass Conviction*, 160 U. Pa. L.Rev. 1789, 1790-1798 (2012).

Equally disturbing is the role of the parties and their respective attorneys in excluding Father in contravention of the wrongful death statute.[5] No one disputes Father's status as Darrell's natural father. Section 537.095 directs petitioners to "diligently attempt to notify all parties having a cause of action" thereunder. §537.095.1. The record lacks any insight into the circumstances behind Grandmother's omission of both parents from the original cause (naming herself "next of kin") or whether she notified them as required by §537.095, though her petition contains no such assurance. The record shows that Grandmother's lawyer was aware of Father's attempts to join the action, yet counsel forged ahead with an unviable plaintiff and then withdrew from the case after the statute of limitations had lapsed.

Respondents, for their part, claim to have lacked notice of Father's motion as directed under Rule 52.12(c), but Father's oversight in this regard supplies Respondents no valid excuse on the present record. "A party has a continuing duty to monitor a case from the filing of the case to final judgment." Manning v. Fedotin, 64 S.W.3d 841, 846 (Mo. App. W.D. 2002). Generally, a party who has been properly summoned is charged with notice of all subsequent proceedings in the case even if no actual notice was received. Courtin v. McGraw Const. Co., 639 S.W.2d 286, 288 (Mo. App. E.D. 1982); Meadowbrook Country Club v. Davis, 384 S.W.2d 611 (Mo. 1964). As detailed in the appendix, the trial court minutes contain thirteen separate entries related to Father. Even absent formal notice pursuant Rule 52.12(c), Respondents had undeniable constructive notice through Father's multiple, unambiguous, and conspicuous filings. Moreover, as a practical matter, the notion that Respondents failed to ascertain the status of Darrell's parents over the course of four years of discovery simply defies belief. On both sides,

---

[5] Mother's counsel in the present case was not involved in the original action.

counsel could not credibly claim that they neglected to inquire of the deceased's parents at any point in the development of the case.

Despite Father's repeated attempts to assert his rights as a first-class plaintiff in the original case, the trial court and the parties and their counsel continued to accept Grandmother's deficient standing for four years of pre-trial litigation. Respondents pivoted to reject her standing only *after* the statute of limitations expired. "Statutes of limitation were never intended to be used as swords." Thorson, 248 S.W.3d at 596.

In 2009 - the year Darrell Williams, Jr. was fatally shot by the Respondent officers - Chief Justice Stith articulated a strategic mission of our legal system: to enhance the public's trust and confidence in the justice system and the whole government.[6] Again this year, Chief Justice Breckenridge reiterated the mandate that citizens "must have faith and trust that, in our courts, they will be treated respectfully and fairly, and that their cases will be decided impartially according to the law."[7] These aspirations cannot be reconciled with the underlying record in the original case.

_____
Lisa Van Amburg, Presiding Judge

---

[6] Laura Stith, Chief Justice of the Supreme Court of Missouri, State of the Judiciary Address, Missouri State Capitol (January 28, 2009) (transcript available at http://www.courts.mo.gov/page.jsp?id=28987).

[7] Patricia Breckenridge, Chief Justice of the Supreme Court of Missouri, State of the Judiciary Address, Missouri State Capitol (January 27, 2016) (transcript available at http://www.courts.mo.gov/page.jsp?id=96693).

# APPENDIX

**Trial court minute entries referring to Father in the original case:**

| Event | Content |
|---|---|
| Father's filing 7/29/2010 | Dear Clerk: My child (Darrell H. Williams, Jr.) was shot and killed by a St. Louis City police officer Nov. 18, 2009. I would like to know if a complaint has been filed with this court in regards to my child's (Darrell H. Williams, Jr.) death. If so, will you please forward me a copy of the docket sheet. Your reply will be appreciated. |
| Docket entry 8/20/2010 | Offender Mail Received.[8] Legal mail received from Darrell William, Sr., United State Penitentiary, Coleman, FL, requesting a copy of the docket sheet. Sent to Certified Copy, original letter is in the legal file. |
| Docket entry 8/30/2010 | Judge/Clerk Note. Docket sheets sent to Darrell Williams USP-2 26008 044 PO Box 1034 Coleman, FL |
| Father's filing 11/7/2010 | Dear Clerk: Please provide me with a copy of the docket sheet regarding the above cause #. Also please provide me with the address and phone # of attorney MacArthur Moten of St. Louis, MO, who represents the case. Your reply will be appreciated. |
| Docket entry 11/12/2010 | Offender Mail Received. Letter from inmate Mr. Darrell Williams, Sr., U.S.P., Post Office Box 1000, Lewisburg PA 17837 requesting a copy of the docket sheet. Sent to Certified Copy. |
| Docket entry 11/15/2010 | Judge/Clerk Note. Photocopy of the docket sheet was processed and sent to defendant. |
| Father's filing 11/18/2010 | Dear Mr. Favazza: The above mention cause no. is in regards to a wrongful death suit regarding my son (Darrell Williams, Jr.). I am currently incarcerated in PA in federal prison. ***I have attempted to become a plaintiff on the suit, but everything is being kept a secret to me. Sir, how can I become a plaintiff and proceed pro se?*** Also, will you please send me a copy of the following:<br><br>1. Petition filed 01-20-10<br>2. All exhibits, including crime scene picture, filed with petition<br>3. Defendants answer to plaintiff's petition, dated 03-16-10<br>4. Propose protective order filed by Defendants, dated 07-08-10<br><br>Your reply and assistance will be appreciated. |
| Docket entry 11/22/2010 | Offender Mail Received. Letter from inmate Mr. Darrell Williams, Sr., U.S.P., Post Office Box 1000, Lewisburg, PA 17837 requesting to be a plaintiff on the case (Pro se). Request for a copy of the petition filed on January 20, 2010, all exhibits including the crime scene pictures filed with the petition, defendant's answer to the plaintiff's petition dated March 16, 2010 and a copy of the protective order filed by the defendant's dated July 8, 2010. Sent to Judge Dowd and Certified Copy. |

---

[8] Regrettably, although this is a civil case in which Father sought recourse for the alleged wrongful death of his own son, the clerk's minutes repeatedly refer to Father as "offender," "defendant," and "inmate."

| | |
|---|---|
| Docket entry 11/24/2010 | Judge/Clerk Note. Copies mailed to Darrell Williams USP 26008-044 PO Box 1000 Lewisburg PA 17837 |
| Father's filing 11/20/10<br><br>Rec'd 11/29/10<br>No corresponding docket entry | Dear Judge Neill or Judge Dowd:[9] I am writing to you concerning the above cause # in which my son (Darrell Williams, Jr.) was shot and killed. I am currently incarcerated, and both sides of the family are keeping everything a secret to me. I have attempted to become a plaintiff on this petition, which has been to no avail. ***As a father, I should be allowed to be a plaintiff. I request that I be listed a "pro se" plaintiff on this petition.*** Also, I request that I be provided with the following:<br><br>1. Petition filed 01-20-2010, including exhibits.<br>2. Defendant's answer to plaintiff petition, dated 03-16-2010<br>3. Plaintiff request to produce to M. Karnowski, dated 04-16-10<br>4. Motion to compel, dated 04-16-10<br>5. Proposed protective order, dated 06-24-10<br>6. Motion for protective order, dated 07-13-10<br>7. Motion-for sanction, dated 07-13-10<br>8. Filed motion, dated 07-16-10<br><br>Your reply will be appreciated. |
| Father's filing 12/12/10 | Dear Clerk: Will you please send me the following information/documents:<br><br>1. Summons issued to all defendants under the above cause #<br>2. Corporation served to all defendants under the above cause #<br>3. All motions filed on 04-19-10 under the above cause #<br>4. 05-12-10 court order<br>5. 07-20-10 court order<br>6. 08-04-10 filing<br>7. ***Procedures for filing a petition***<br>8. Docket sheet |
| Docket entry 12/16/10 | Offender Mail Received. A letter from the defendant requesting a copy of the summons issued to the defendants, motion dated 4/19/10, court order dated 5/12/10, motion dated 8/4/10 and the docket sheet. Sent to Certified Copy. |
| Docket entry 12/29/10 | Judge/Clerk Note. Request for copy of pleadings and docket sheets prepared for Darrell Williams, Register Number 26008-044, U.S. Penitentiary, P.O. Box 1000, Lewisburg, PA 17837 |
| Father's filing 2/20/11 | Dear Clerk: Will you please send me a docket sheet regarding the above case #. Your reply will be appreciated. |
| Docket entry 2/24/11 | Offender Mail Received. Letter from the defendant requesting docket sheet. |

---

[9] Though only two judges are named in the court minutes around the time of Father's letters, a total of eight different judges appear in the trial court's minutes corresponding to various orders and trial settings over the four-year period that the original case was pending, undoubtedly due to the 22nd circuit's docketing system under local rule 1.2. The record does not always reflect whether Father's requests and pleadings were brought to the attention of the judge to which the case was then assigned. Regardless, vis-à-vis the public, the court is a single institution.

| | |
|---|---|
| Docket entry 2/28/11 | Judge/Clerk Note. Letter received from defendant February 25, 2011 requesting copy of documents in files. Letter sent to file CC |
| Father's filing 5/10/11 | Dear Clerk: Enclosed is a motion that I would like to file with this court. Also please send me the local court rule for filing a law suit. Also please send me a court docket sheet of cause #1022-CC00155. |
| | ***Comes now plaintiff Darrell Williams, pro se, requesting to become a plaintiff*** in cause #1022-CC00155, for the following reason: |
| |     1. ***Plaintiff Darrell Williams, Sr., is the father of the deceased Darrell Williams, Jr.*** |
| | Wherefore Plaintiff requests that this motion be granted. |
| | Certificate of Service. I certify that a true and correct copy of the enclosed motion was mailed postage prepaid to the court clerk on this 10th day of May, 2011.[10] |
| Docket entry 5/16/11 | Offender Mail Received. A letter from Darrell Williams was received requesting a copy of the docket sheet. The letter was filed in the legal file and a post card was sent to the Darrell Williams with instructions for copies from the legal file. |
| | ***Motion Filed. Mr. Darrell Williams Sr. motion to be added as a party plaintiff.*** |
| Father's filing 7/12/11 | Dear Clerk: Will you please send me a copy of the docket sheet regarding the above cause #. I am currently confined in the state of PA and I don't have access to internet. |
| Docket entry 7/26/11 | Judge/Clerk Note. A postcard with the number of pages requested and the amount due for copies was mailed to Darrell Williams.[11] |

---

[10] Father attempted to format his motion in compliance with procedural rules by including a certificate of service but obviously misunderstood its purpose, *i.e.*, to ensure notice to other parties.

[11] After a full year of repeated attempts to participate in the case, all to no avail, Father evidently threw up his hands, as docket sheet contains no other references to Father after July 2011.